UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITNEY DESIGN, INC., | ) | Case No. 09-51928 |
| | ) | |
| Debtor. | ) | |

**MOTION FOR ENTRY OF INTERIM ORDER AND FINAL ORDER AUTHORIZING (A) USE OF CASH COLLATERAL (B) ENTERING INTO POSTPETITION FINANCING ARRANGEMENTS; (C) GRANTING SECURED, SUPERPRIORITY CLAIMS AND LIENS; AND (D) PROVIDING <u>ADEQUATE PROTECTION</u>**

Whitney Design, Inc. ("<u>Whitney</u>" or "<u>Debtor</u>"), by and through its undersigned attorneys, hereby moves the Court, pursuant to Sections 105, 363(c), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>), for the entry of: (i) an interim order: (a) authorizing the Debtor to use cash collateral in which Enterprise Bank & Trust ("<u>Enterprise</u>" or the "<u>Bank</u>") and Eagle Fund I, L.P. ("<u>Eagle</u>") hold an interest, (b) authorizing the Debtor obtain secured postpetition financing up to an aggregate amount not to exceed $500,000 from Enterprise (the "<u>DIP Loan</u>") during the interim period, (c) authorizing the Debtor to grant certain liens and other relief to Enterprise and Eagle, and (d) scheduling the final hearing on this Motion under Bankruptcy Rule 4001(c) (the "<u>Final Hearing</u>") within the next 30 days; and (ii) a final order (the "<u>Final Order</u>") approving the use of cash collateral and extension of postpetition credit under Sections 363, 364(c) and (d) of the Bankruptcy Code (collectively referred to as the "<u>Financing Facility</u>").

In support of this Motion, the Debtor respectfully represents as follows:

## I. BACKGROUND

### A. The Chapter 11 Filings; Jurisdiction and Venue

1. On November 21, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code. The Debtor continues to operate its businesses and manage its properties as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over the Debtor's chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

3. No creditors' committee has yet been appointed in the Debtor's case. Likewise, no trustee or examiner has been appointed.

4. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested in this Motion are set forth in the Declaration of Mark J. Brown in Support of Chapter 11 Petition and First Day Orders (the "Brown Declaration") filed contemporaneously herewith and incorporated herein by reference.

### B. Prepetition Lending Relationships with Enterprise and Eagle

5. Prior to the Petition Date, the Debtor was liable to the Bank for all indebtedness, liabilities and other obligations of the Debtor under (a) that certain Loan and Security Agreement, dated May 5, 2008 (the "Enterprise Prepetition Loan Agreement"), (b) that certain Revolving Credit Note, dated May 5, 2008, in the original amount of $7,500,000.00 (the "Enterprise Prepetition Line of Credit Note"; together with the Prepetition Loan Agreement, the "Enterprise Prepetition Credit Agreement"); and (c) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Bank,

including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect the "Enterprise Prepetition Loan Documents").

6. As of the Petition Date, the Debtor was indebted under the Enterprise Prepetition Loan Documents (a) on account of Debtor's Obligations (as defined in the Enterprise Prepetition Loan Documents) to the Bank, in the aggregate amount of approximately $5,254,329.37, plus, interest accrued and accruing (at the rates set forth in the Enterprise Prepetition Loan Documents), costs, expenses, fees (including attorneys' fees and legal expenses), other charges (in each case, to the extent reimbursable under the Enterprise Prepetition Loan Documents) and other obligations (collectively the "Enterprise Prepetition Obligations").

7. To secure the Enterprise Prepetition Obligations, the Debtor granted blanket security interests and liens (the "Enterprise Prepetition Liens") to Enterprise on the personal property of the Debtor and the proceeds thereof, including the Cash Collateral, as described and defined as "Collateral" in the Enterprise Prepetition Loan Documents (collectively, the "Enterprise Prepetition Collateral"). The Enterprise Prepetition Obligations are secured by the Enterprise Prepetition Liens granted by the Debtor. The Enterprise Prepetition Liens have priority over all other liens, except (a) the Liens (as defined below), and (b) the Carve Out (as defined below) to which the Liens are also subject.

8. Subject to the terms hereof, the Debtor stipulates and acknowledges that (a) the Enterprise Prepetition Liens are valid, binding, enforceable, and perfected liens, subject only to the Liens and the Carve-Out and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Enterprise

Prepetition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Enterprise Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Enterprise Prepetition Obligations exist, and no portion of the Enterprise Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Enterprise Prepetition Obligations constitute allowable secured claims, and (d) upon an Interim Order granting this Motion being entered, the Debtor shall waive, discharge and release Enterprise, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtor may have (x) to challenge or object to the amount, validity, or enforceability of the Enterprise Prepetition Obligations, (y) to challenge or object to the validity, enforceability, or non-voidability of the Enterprise Prepetition Liens securing the Enterprise Prepetition Obligations, and (z) to bring or pursue any and all claims, counterclaims, objections, challenges, causes of action and/or choses in action against the Bank or arising out of, based upon or related to the Enterprise Prepetition Loan Documents or otherwise.

9.     Upon the entry of an interim order granting this Motion, the Debtor and Bank will execute that certain Second Amendment to Loan and Security Agreement and First Amendment to Revolving Credit Note (collectively, with all documents at any time executed in connection therewith, including, but not limited to, that certain Agreement to be executed by and among 314 Holdings, Household Essentials, LLC ("Household Essentials"), the Bank and Eagle, the "<u>DIP Loan Documents</u>"), pursuant to which the Bank will agree to make the DIP Loan to Debtor subject to the satisfaction of conditions set forth therein.

10. Prior to the Petition Date, the Debtor was liable to Eagle for all indebtedness, liabilities and other obligations of the Debtor under (a) that certain Note and Warrant Purchase Agreement, dated as of January 19, 2006, by and among the Debtor and Eagle, (b) that certain Promissory Note in the original principal amount of $1,500,000, dated as of January 19, 2006, issued by the Debtor in favor of Eagle, (c) that certain Warrant, dated as of January 19, 2006, issued by Tricor to Eagle pursuant to which Tricor agreed to repurchase certain contractual rights from Eagle for $1,331,500.00, and (d) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Eagle, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect, the "Eagle Prepetition Loan Documents" and, together with the Enterprise Prepetition Loan Documents, the "Prepetition Loan Documents").

11. As of the Petition Date, the Debtor was indebted under the Eagle Prepetition Loan Documents (a) on account of Debtor's Obligations (as defined in the Eagle Prepetition Loan Documents) to Eagle, in the aggregate amount of approximately $2,831,500, plus, interest accrued and accruing (at the rates set forth in the Eagle Prepetition Loan Documents), costs, expenses, fees (including attorneys' fees and legal expenses), other charges (in each case, to the extent reimbursable under the Eagle Prepetition Loan Documents) and other obligations (collectively the "Eagle Prepetition Obligations" and, together with the Enterprise Prepetition Obligations, the "Prepetition Obligations").

12. To secure the Eagle Prepetition Obligations, the Debtor granted blanket security interest and liens (the "Eagle Prepetition Liens") to Eagle on the personal property of the Debtor

5030315.4

- 5 -

and the proceeds thereof, including the Cash Collateral, as described and defined as "Collateral" in the Eagle Prepetition Loan Documents (collectively, the "Eagle Prepetition Collateral" and, together with the Enterprise Prepetition Collateral, the "Prepetition Collateral"). The Eagle Prepetition Obligations are secured by the Eagle Prepetition Liens granted by the Debtor. The Eagle Prepetition Liens have priority over all other liens, except (a) the Liens (as defined below), (b) the Carve Out (as defined below) to which the Liens are also subject, (c) the liens securing the Enterprise Prepetition Obligations and (d) any liens which are valid, properly perfected, unavoidable, and senior to or *pari passu* with the Eagle Prepetition Liens (collectively items (a) through (d) are referred to as, the "Priority Liens").

13. Subject to the terms hereof, the Debtor stipulates and acknowledges that (a) the Eagle Prepetition Liens are valid, binding, enforceable, and perfected liens, subject only to the Liens and the Carve-Out and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Eagle Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Eagle Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Eagle Prepetition Obligations exist, and no portion of the Eagle Prepetition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Eagle Prepetition Obligations constitute allowable secured claims, and (d) upon an Interim Order granting this Motion being entered, the Debtor shall waive, discharge and release Eagle, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtor may have (x) to challenge or object to the amount, validity, or enforceability of the Eagle Prepetition Obligations, (y) to

challenge or object to the validity, enforceability, or non-voidability of the Eagle Prepetition Liens securing the Eagle Prepetition Obligations, and (z) to bring or pursue any and all claims, counterclaims, objections, challenges, causes of action and/or choses in action against Eagle or arising out of, based upon or related to the Eagle Prepetition Loan Documents or otherwise.

14. On May 5, 2008, Enterprise and Eagle entered into that certain Subordination Agreement, pursuant to which Eagle agreed, among other things that all obligations owed or owing by Debtor to Eagle pursuant to the Eagle Prepetition Loan Documents, and the liens securing such obligations, are subordinated to all obligations – and liens securing such obligations – to Enterprise pursuant to the Enterprise Prepetition Loan Documents.[1]

15. The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the DIP Loan and the use of the Cash Collateral. The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, to purchase and supply new inventory and otherwise finance its operations, is essential to the Debtor's continued viability. The Debtor's critical need for financing is immediate. In the absence of the DIP Loan and the use of the Cash Collateral, serious and irreparable harm to the Debtor and its estates would occur. In addition, 314 Holdings, a non-debtor affiliate of the Debtor, requires the use of certain of the Bank's and Eagle's collateral (including the cash proceeds of such collateral) to fund its business operations and to preserve its going-concern value for the ultimate benefit of the Debtor and its estate. The preservation, maintenance and enhancement of the going concern value of the Debtor is of the utmost significance and importance to enabling a sale of substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code for the benefit of Debtor's estate and creditors.

---

[1] The prepetition loan documents with Enterprise and Eagle are voluminous. Any party wishes to review these documents may contact David A. Warfield, 314-552-6079 or dwarfield@thompsoncoburn.com.

5030315.4

16. Given the Debtor's current financial condition, financing arrangements and capital structure, the Debtor cannot obtain unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code as an administrative expense. Financing on a postpetition basis is not otherwise available without the Debtor: (i) granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject to the Carve-Out; (ii) securing, pursuant to sections 364(c) and (d) of the Bankruptcy Code, such indebtedness and obligations with security interests in and liens on substantially all of the Debtor's assets as described below; and (iii) providing for adequate protection as described below.

C. **Summary of Proposed Financing Facility**

17. The Debtor requests authorization to comply with and perform all of the terms and conditions of the DIP Loan Documents and to repay amounts borrowed, with interest to the Bank in accordance with the terms and conditions set forth in the DIP Loan Documents and any Order granting this Motion. The Debtor further requests authorization to pay all facility, commitment and other fees and expenses, including without limitation, all reasonable fees and expenses of professionals engaged by the Bank, in accordance with the terms of the DIP Loan Documents. The DIP Loan and all postpetition interest, fees, costs, expenses, indebtedness, obligations and liabilities of the Debtor to the Bank under the DIP Loan Documents and any Order granting this Motion are hereinafter referred to as the "Postpetition Obligations" and, together with the Prepetition Obligations, the "Obligations".

18. The Debtor requests authorization to use the proceeds of the DIP Loan and to use the Cash Collateral in the operation of its business and for payment of Chapter 11 expenses, including professional fees, in each case in accordance with a budget to be provided prior to the

5030315.4

- 8 -

hearing on this Motion and subject to the DIP Loan Documents and any Order granting this Motion.

19. A summary of the salient terms of the DIP Loan follows:

| **Borrowers:** | Tricor Consumer Products, Inc.<br>Whitney Design, Inc. |
|---|---|
| **Lender:** | Enterprise Bank & Trust Company |
| **Facility Type:** | Amendment of existing $7.5 million revolving line of credit to provide $2,065,670.00 in postpetition DIP financing |
| **Maturity:** | 90 days |
| **Interest rate:** | 7.5% per annum |
| **Fees:** | $25,000 upon Bankruptcy Court's entry of an Interim Order and $25,000 upon entry of Final Order authorizing the Debtors to borrow under the DIP Facility; and $50,000 upon approval of a sale of substantially all of the assets to Household Essentials |
| **Borrowing Base** | (i) 85% of the net amount of Eligible Accounts of Debtor outstanding at such date; plus<br><br>(ii) the lesser of (A) $4,000,000.00, or (B) 50% of the value of Eligible Inventory of Debtor at such date calculated on the basis of the lower of cost or market with the cost of raw materials and finished goods calculated on a first-in, first-out basis; minus<br><br>(iii) any Letter of Credit Obligations incurred by Lender on behalf of either Borrower; plus<br><br>(iv) the lesser of (A) $500,000.00, or (B) 100% of the value of the Cash Collateral at such date (provided, however, with respect to any deposit account, securities account or other account which is pledged to Lender, amounts in such account shall be excluded from this calculation until such time as Lender receives a control agreement in form and substance reasonably satisfactory to Lender); plus<br><br>(v) $850,000.00 (subject to below).<br><br>Notwithstanding anything herein to the contrary, the additional $850,000 (part (v) of the calculation above) shall only be |

|  | included in the calculation of the Borrowing Base after the Petition Date, and shall be subject to the terms and conditions of the DIP Facility set forth in Section 1.2 of the DIP Loan Documents. |
|---|---|
| **Budget** | See Exhibit A to the DIP Motion |
| **Borrowing Amount Before Final Hearing** | $500,000 |
| **Liens** | Section 364(c)(2) lien on any prepetition unencumbered property of the estate to secure Postpetition Obligations<br><br>Section 363(d)(1) lien on all Prepetition Collateral to secure Postpetition Obligations<br><br>Section 364(c)(3) lien on Prepetition Collateral to secure Postpetition Obligations |
| **Collateral** | All present and after-acquired property of the Debtor of any nature whatsoever, including, without limitation, the Prepetition Collateral, all tangible and intangible personal property and fixtures, real estate, all promissory notes, leasehold interests, all cash, money, certificates, investment property, securities, chattel paper, and other property contained in any account maintained by the Debtor, including all cash and cash equivalents maintained in any account maintained by the Debtor with the Bank or any other financial institution, letter of credit rights, books, records, writings, data bases, information, commercial tort claims, and all of the proceeds of -- or property recovered from -- Debtor's causes of action pursuant to chapter 5 of the Bankruptcy Code. |
| **Replacement Liens** | As adequate protection for the diminution in value of the Prepetition Collateral, the Bank and Eagle shall be granted (effective upon the date of any Interim Order granting this Motion and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid, perfected and continuing, replacement security interests in, and liens on (the "Replacement Liens") all of the Debtor's right, title and interest in, to and under the Collateral, to the same extent, validity and scope as existed in favor of the Bank and Eagle, as of the Petition Date, subject only to (x) the Carve-Out, and (y) the Liens granted pursuant to any Order granting this Motion and the DIP Loan |

| | |
|---|---|
| | Documents to Bank to secure the DIP Loan. |
| **Adequate Protection Claims** | As adequate protection for the diminution in value of the Prepetition Collateral, the Bank and Eagle shall be granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority claims (the "<u>Adequate Protection Claims</u>") immediately junior only to (x) the Superpriority Claims granted pursuant to any Order granting this Motion to Bank in respect of the DIP Loan and (y) the Carve-Out; provided, however, that all Adequate Protection Claims granted to Eagle are subordinated to the Adequate Protection Claims granted to the Bank. |
| **Superpriority Claims** | All of the Postpetition Obligations shall constitute allowed claims against the Debtor (the "<u>Superpriority Claims</u>") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b),726, 1113 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor (including Eagle) in the Debtor's chapter 11 case or any subsequent proceedings under the Bankruptcy Code. |
| **Carve-Out** | The Liens, Replacement Liens, Superpriority Claims and Adequate Protection Claims are all subject to a Carve-Out for (a) payment of quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); (b) the payment of the fees and expenses of counsel and professionals retained by the Debtor and any statutory committee that may be allowed by the Court ("<u>Allowed Fees</u>"), pursuant to sections 327-330 of the Bankruptcy Code (the "<u>Professional Fee Carve-Out</u>"); <u>provided</u>, <u>however</u>, that the amount of Allowed Fees entitled to the protections of the Professional Fee Carve-Out that are attributable to time expended or expenses incurred after the occurrence of an Event of Default under the DIP Loan Documents shall not exceed $25,000 or such other amount as may be subsequently agreed upon by the Bank, Eagle and the professionals; provided, further, <u>provided</u>, <u>further</u>, that Carve-Out shall not include any fees or disbursements arising after the conversion of this chapter 11 case to a case under chapter 7 of the Bankruptcy Code. |

20. All of the Debtor's cash constitutes Prepetition Collateral or the proceeds of Prepetition Collateral and, therefore, is cash collateral of the Bank and Eagle within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral").

21. Pursuant to Section 363 of the Bankruptcy Code, the Debtor may not use Enterprise's and Eagle's respective Cash Collateral without either (a) consent of Enterprise and Eagle or (b) a court order. The Debtor has negotiated the terms of a consensual order calling for its use of Cash Collateral in which each Enterprise and Eagle hold an interest.

22. Notwithstanding that Bank and Eagle, in their capacities as the prepetition lenders under the Prepetition Loan Documents, may not be adequately protected pursuant to the terms of this Motion, Bank and Eagle, in their capacities as prepetition lenders, nonetheless consented to the use of Cash Collateral upon the terms and conditions of this Motion. Notwithstanding any other provision hereof, and in accordance with the Bank's and Eagle's rights under the Subordination Agreement, the grant of adequate protection to Bank and Eagle pursuant hereto is without prejudice to the right of the Bank and Eagle to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

## THE NEED FOR THE FINANCING FACILITY

23. In order to successfully operate its businesses during this Chapter 11 case, the Debtor must use Enterprise's and Eagle's respective Cash Collateral pursuant to Section 363 of the Bankruptcy Code and borrow funds postpetition pursuant to Section 364 of the Bankruptcy Code. Access to this financing package is necessary for the Debtor to conduct ordinary business operations, which will maximize the value of its estate by preserving its going concern values.

## THE TERMS OF THE FINANCING FACILITY ARE FAIR, REASONABLE AND APPROPRIATE

24. In the Debtor's business judgment, the Financing Facility is the only financing option available in the circumstances of this case. The purpose of the Financing Facility is to enable the Debtor to maintain normal business operations during the pendency of the completion of this case. Further, the Financing Facility does not directly or indirectly deprive the Debtor's estate or other parties in interest of possible rights and powers by restricting the services for which professionals may be paid in this case. See In re Tenney Village Co., 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989) (denying approval of a financing facility that, among other things, did not provide a carve out for professional fees).

25. The Debtor has exercised sound business judgment in determining that this Financing Facility is appropriate. The terms of the Financing Facility are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the Financing Facility.

26. Pending the Final Hearing, the Debtor requires that the Financing Facility be available for, among other things, the orderly continuation and operation of its businesses, to maintain business relationships with vendors and suppliers, and that the Debtor be authorized to borrow up to $500,000 in DIP Loans

27. Absent interim relief, the Debtor face the very real risk of substantial disruption in its business operations and damage to vendor and service provider relationships and disruption of business operations. Consequently, if interim relief is not obtained, the Debtor's efforts to consummate going-concern sales will be immediately and irreparably jeopardized.

28. Bankruptcy Rule 4001(c) permits a court to approve a Debtor's requests for financing during the 15-day period following the filing of a motion requesting authorization to obtain postpetition financing "only to the extent necessary to avoid immediate and irreparable

harm to the estate pending a final hearing." Bankruptcy Rule 4001(c)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. See, e.g., Simasko, 47 B.R. at 449; see also Ames, 115 B.R. at 38. After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the Debtor's business, and the Debtor is entitled to borrow those amounts that it believes are prudent in the operation of its business. See, e.g., Simasko, 47 B.R. at 449; Ames, 115 B.R. at 36.

29. The terms and conditions of the Financing Facility are fair and reasonable and were negotiated by the parties in good faith and at arms' length. Therefore, Enterprise and Eagle should be accorded the benefits of Section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the Financing Facility, or any interim or final order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

30. The Court may authorize the Debtor to use Enterprise's and Eagle's Cash Collateral on an interim emergency basis pending the Final Hearing pursuant to Bankruptcy Rule 4001(b) and (c).

31. Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is no later than 30 days from the Petition Date.

### IV. NOTICE

32. Notice of this Motion has been provided to: (a) the United States Trustee; (b) the Debtor's 20 largest unsecured creditors, as listed on the schedules filed pursuant to Bankruptcy Rule 1007(d) with the Debtor's petition; (c) Enterprise; (d) Eagle; and (e) such other parties, if

any, listed on the Certificate of Service filed by the Debtor. In light of the nature of the relief requested, the Debtor submits that no further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court:

(A) enter an Interim Order that (1) approves the Financing Facility, (2) authorizes the Debtor to obtain postpetition credit under the DIP Loan on an interim basis on to exceed $500,000.00, and (3) schedules the Final Hearing within the next 30 days;

(B) enter the Final Order that approves the Financing Facility on a permanent basis, pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, and

(C) grant the Debtor such other and further relief as the Court may deem proper.

Dated: November 21, 2009

THOMPSON COBURN LLP

By: */s/ David A. Warfield*
    David A. Warfield (EDMo # 4642)
    dwarfield@thompsoncoburn.com
    Allison E. Graves (EDMo # 5217003)
    agraves@thompsoncoburn.com
    One US Bank Plaza
    St. Louis, MO 63101
    Ph. 314.552.6000
    Fax: 314.552.7000

Proposed Counsel for the Debtor and Debtor in Possession

Exhibit A

(Budget)

| # | | Week | Wk 01 | Wk 02 | Wk 03 | Wk 04 | Wk 05 | Wk 06 | Wk 07 | Wk 08 | Wk 09 | Wk 10 | Wk 11 | Wk 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | Week | Wk 01 | Wk 02 | Wk 03 | Wk 04 | Wk 05 | Wk 06 | Wk 07 | Wk 08 | Wk 09 | Wk 10 | Wk 11 | Wk 12 |
| 2 | | Days | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 |
| 3 | | | 15-Nov | 22-Nov | 29-Nov | 6-Dec | 13-Dec | 20-Dec | 27-Dec | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan |
| 4 | Cash Receipts | | 475 | 475 | 475 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 |
| 5 | Cash On Hand | | 0 | | | | | | | | | | | |
| 6 | Disbursements | | | | | | | | | | | | | |
| 7 | | Inventory - Orient | 387 | 154 | 521 | 443 | 260 | 415 | 137 | 127 | 478 | 843 | 375 | 790 |
| 8 | | Inventory - Domestic | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | 5 | 5 | 5 |
| 9 | | Professional Fees | 30 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | 15 | 15 | 15 | 15 |
| 10 | | CCP Fees | 5 | | | | | | | | | | | |
| 11 | | WD BR Fees | | | | | 5 | | 30 | | | | | |
| 12 | | Payroll | 117 | | 117 | | 117 | | 117 | | 127 | | 125 | |
| 13 | | Contract Labor | | | | 16 | | | | | | | | |
| 14 | | Employee Insurance | 28 | | | | 28 | | | | 28 | | | |
| 15 | | Building Rent | | | | 63 | | | | | | 63 | | |
| 16 | | Rep Commissions | 11 | 23 | 9 | | 11 | 23 | 9 | | | 11 | 23 | 9 |
| 17 | | Freight & Customs | 48 | 6 | 62 | 62 | 53 | 43 | 27 | 25 | 44 | 165 | 25 | 150 |
| 18 | | Interest - Enterprise | | 25 | | | 25 | | | | | 25 | | |
| 19 | | Interest - Eagle | | | | | | | | | | | | |
| 20 | | Other | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 |
| 22 | | Total | 666 | 248 | 749 | 650 | 513 | 521 | 361 | 212 | 800 | 1,104 | 608 | 1,009 |
| 23 | Change | | (191) | 227 | (274) | (125) | 12 | 4 | 164 | 313 | (275) | (579) | (83) | (484) |
| 24 | Cumulative Change | | 1,073 | 1,299 | 1,025 | 900 | 912 | 916 | 1,081 | 1,393 | 1,119 | 540 | 457 | (27) |
| 24a | POST Cuml' Cash Change | | | 227 | (48) | (172) | (161) | (156) | 8 | 321 | 46 | (533) | (616) | (1,100) |
| 26 | LOC - Beginning | | 4,990 | 5,180 | 4,954 | 5,228 | 5,353 | 5,341 | 5,337 | 5,172 | 4,860 | 5,134 | 5,713 | 5,796 |
| 27 | LOC - End | | 5,180 | 4,954 | 5,228 | 5,353 | 5,341 | 5,337 | 5,172 | 4,860 | 5,134 | 5,713 | 5,796 | 6,280 |
| 28 | LOC - End + 180k LC | | 5,360 | 5,134 | 5,408 | 5,533 | 5,521 | 5,517 | 5,352 | 5,040 | 5,314 | 5,893 | 5,976 | 6,460 |