# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 09-51928 |
| WHITNEY DESIGN, INC., | Chapter 11 |
| Debtor. | Sale Procedures Hearing Date: December 2, 2009 |
| | Sale Procedures Hearing Time: 10:00 a.m. |
| | |
| | MOTION FOR ORDERS (A) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) ESTABLISHING SALE AND BIDDING PROCEDURES, AND (D) APPROVING EXPENSE REIMBURSEMENT |
| | |
| | David A. Warfield, #4642 |
| | Allison E. Graves, #5217003 |
| | THOMPSON COBURN LLP |
| | One US Bank Plaza |
| | St. Louis, MO 63101 |
| | (314) 552-6000 (Phone) |
| | (314) 552-7000 (Fax) |

COME NOW Debtor Whitney Design, Inc. ("Debtor"), by and through its undersigned counsel, and for its *Motion for Orders (A) Authorizing Sale of Assets Free and Clear of All Liens, Claims, and Encumbrances, Subject to Higher and Better Offers, (B) Establishing Sale and Bidding Procedures, (C) Approving Expense Reimbursement, and (D) Approving Compromise and Settlement* (the "Motion"), respectfully state as follows:[1]

---

[1] All capitalized terms not otherwise defined in this Motion shall have the same meaning as set forth in the Household Purchase Agreement.

5038709

## BACKGROUND

1. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. §157(a), (b)(1), (b)(2)(A), E.D. Mo. L.R. 81-9.01(B)(1), and 11 U.S.C. §§ 363 and 365. This is a "core" proceeding under 28 U.S.C. §157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §1409.

3. On November 21, 2009 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

4. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to operate its businesses and manage its financial affairs as a debtor-in-possession.

5. The Debtor was formed in 1994, and is in the business of importing and distributing household goods, including steel-top ironing boards, ironing board pads and covers, hampers, and sorters. The Debtor also imports and distributes laundry care accessories, outdoor clothes dryers, clothing organizers, wicker storage items and travel accessories.

6. The Debtor imports substantially all of its products from vendors in China. Its customers are retailers located primarily through the United States, including big box retailers, hardware stores, specialty stores, internet retailers, and distributors.

7. The Debtor believes that the sale by Debtor of substantially all of its assets (collectively, the "Assets"), as a going concern, for the highest obtainable consideration is in the best interests of Debtor, its creditors and other parties in interest.

8. The Debtor and Household Essentials, LLC ("Household") shall enter into an Asset Purchase Agreement (the "Household Purchase Agreement") prior to the Sale Procedure Hearing (as hereinafter defined). A true and complete copy of the latest version of the Household Purchase Agreement is attached hereto as Exhibit A.[2] Pursuant to the terms of the Household Purchase

---
[2] The terms of the Household Purchase Agreement are subject to change prior to the Sale Procedure Hearing.

Agreement, which are subject to the approval of this court, Household has agreed to purchase and Debtor has agreed to sell the Assets, which assets are more fully and completely described in the Household Purchase Agreement.

9. By this Motion, Debtors seek the following:

(a) Entry of an Order (the "Procedures Order") following a hearing on December 2, 2009 at 10:00 a.m. (the "Sale Procedures Hearing") (i) establishing certain objection deadlines, hearing dates and other procedures (the "Bidding and Sale Procedures") for considering a sale of the Assets, under Sections 363 and 365 of the Bankruptcy Code, and (ii) approving the reimbursement of certain fees and expenses of Household (the "Expense Reimbursement") under certain conditions; and

(b) Entry of an Order (the "Sale Order") following a final hearing to be scheduled by the Court (the "Sale Hearing") authorizing Debtors (i) to sell the Assets to Household pursuant to the Household Purchase Agreement free and clear of all liens, claims and encumbrances or, alternatively, in the event that the Court approves a higher and better offer from a party not affiliated with Household, approving the sale of the Assets to such other party and the payment of the Expense Reimbursement to Household, and (ii) approving the assumption and assignment of executory contracts and unexpired leases included among the Assets.

## THE MARKETING PROCESS

10. Household was formed by James Glenn and Mark J. Brown, the principals of the Debtor, to purchase the Assets out from the Debtor.

11. In order to market the Assets to other potential bidders and to instill confidence in the marketing process, the Debtor retained Brent Baxter ("Baxter") and Clayton Capital Partners ("CCP") on October 6, 2009 to begin marketing the Assets to prospective purchasers. On November 25, 2009, this Court entered an Order approving the Debtor's application to employ Baxter as Chief Sales

Officer ("CSO") in this case. Baxter will continue to serve as the primary liaison between the Debtor and prospective purchasers.

12. The offer submitted by Household for the Assets is the highest and best of the proposals that the Debtor has received for the Assets.

13. The sale of the Assets to Household under the Household Purchase Agreement is the product of substantial negotiations between Baxter and the Debtor, on the one hand, and Household, on the other.

## THE PROPOSED SALE

14. Household proposes to purchase the Assets (as more fully and completely described in the Household Purchase Agreement) for a base purchase price that will include submission of the Credit Bid and assumption of the Assumed Obligations, each as defined in the Household Purchase Agreement (the "Purchase Price"), subject to certain additional compensation and adjustments described in the Household Purchase Agreement and subject to certain terms and conditions set forth in the Household Purchase Agreement (the "Proposed Sale"). The precise amount of the purchase price will depend on the indebtedness due as of the closing. Nevertheless, the Debtor estimates that the purchase price under the Household Purchase Agreement will be approximately $8,729,500.00.

15. The Proposed Sale has been negotiated at arms-length and constitutes a good faith offer to purchase in accordance with Section 363(m) of the Bankruptcy Code. As described above, Household was formed by two principals of the Debtor, and the Debtor retained Baxter and CCP to independently market the Assets to other prospective purchasers.

16. The Closing of the Proposed Sale is to occur upon satisfaction or waiver of the various conditions to closing set forth in Articles 8 and 9 of the Household Purchase Agreement.

## APPROVAL OF EXPENSE REIMBURSEMENT

17. In consideration of Household's agreement to be bound by the terms of the Household Purchase Agreement, the Debtor has agreed, subject to Court approval, to reimburse Household for certain expenses incurred by Household in connection with the Proposed Sale under certain terms and conditions as set forth in the Household Purchase Agreement. In summary, Household shall be reimbursed in cash for all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and expenses) incurred by Household in connection with this bankruptcy case and the negotiation, execution and delivery of the Household Purchase Agreement and other legal work concerning acquisition of the Assets, up to an aggregate amount of two percent (2%) of the Purchase Price (the "Expense Reimbursement") in the event that (a) the Debtor consummates an Alternative Transaction, (b) the Debtor files a plan of reorganization contemplating the sale or retention of the Assets by the Debtor in a manner substantially inconsistent with the terms of the Household Purchase Agreement, or (c) a plan of reorganization for the Debtor that does not contemplate the transactions contemplated by the Household Purchase Agreement is confirmed.

18. The Debtor requests that the Court approve payment of the Expense Reimbursement under the conditions set forth in the Household Purchase Agreement as an administrative expense under 11 U.S.C. § 503(b) payable in full by the Debtor to Household to be deducted from the purchase price concurrently with the closing of the transaction with a party other than Household or an affiliate of Household. The Expense Reimbursement is reasonable in amount and would fairly compensate Household for the substantial time and effort it has invested and the risks it has assumed and for time and effort that Household will incur prior to the Sale Hearing in performing additional due diligence and negotiating with third-parties, such as holders of executory contracts. The Debtor believes that Household's agreement to purchase the Assets, as evidenced by the Household Purchase Agreement, is critical to arranging an orderly sale of the Assets and obtaining the highest realizable price. If Household had not committed its resources to the sale process, the Debtor may have been forced to resort to a less orderly

process with higher costs and the risk of a smaller recovery for their estates. Household's offer also benefits the estates by creating a form of purchase agreement and by establishing the "floor" amount of the purchase price, both of which Debtor will now use to attempt to generate competing bids. Accordingly, Household's efforts have provided material benefits to the Debtor's estate that justify payment of the Expense Reimbursement.

### APPROVAL OF SALE AND BIDDING PROCEDURES

19. The Debtor requests approval of the following procedures governing the Sale Hearing and the submission of any bid (a "<u>Competing Bid</u>") by parties interested in purchasing the Assets:

   (a) Any parties desiring to submit a Competing Bid (hereinafter referred to as "<u>Competitive Bidders</u>") must <u>by 5:00 p.m. (St. Louis time) on January 7, 2010</u> (the "<u>Bid Deadline</u>") file any and all documents evidencing their Competing Bid (and required herein) with the Court and serve copies of such documentation upon David A. Warfield, Thompson Coburn LLP, One U.S. Bank Plaza, St. Louis, Missouri 63101; and Brent Baxter, Clayton Capital Partners, 8820 Ladue Road, Suite 101, St. Louis, MO 63124.

   (b) Competing Bids must be in the form of one or more letters stating that (i) such Competitive Bidder offers to purchase all of the Assets upon substantially the same terms and conditions set forth in the Household Purchase Agreement, together with all exhibits and schedules thereto, marked to show any amendments and modifications to the Household Purchase Agreement, including, without limitation, the proposed purchase price and time of closing; (ii) such Competitive Bidder is prepared to enter into and consummate the transaction by the deadlines set forth in the Household Purchase Agreement; and (iii) such Competing Bid is irrevocable until the completion of the Sale Hearing, and, in the event that the Competitive Bidder is the Prevailing Party (as defined herein) until January 30, 2009.

   (c) Prior to receipt by a Competitive Bidder of any non-public information (including, without limitation, business and financial non-public information and access to representatives of the Debtor) from the Debtor or the CSO, such Competitive Bidder shall execute an appropriate confidentiality agreement.

   (d) A Competing Bid will not be considered by the Debtor or the Court as qualified for the Auction, as hereinafter defined, unless such Competing Bid is for an amount equal to, or greater than the aggregate sum of (i) the Credit Bid; and (ii) the Expense Reimbursement;

   (e) Any subsequent Competing Bids thereafter must be higher than the existing lead bid in increments of not less than the amount of the Expense Reimbursement, plus $250,000 in cash; <u>provided</u>, <u>however</u>, any competing Bid submitted at the

Auction by Household shall be increased by the dollar value of the Expense Reimbursement for purposes of determining which constitutes the Highest or Best Bid;

(f) a higher Bid will not be considered by the Debtor as qualified for the Auction if: (I) such Bid contains financing or due diligence contingencies of any kind; (II) such Bid consists of any form of consideration other than cash consideration, payable by wire transfer of immediately available funds to the account or accounts designated in writing by the Debtor; (III) such Bid is not received by the Debtor and Household in writing on or prior to the third (3rd) business day prior to the Auction; (IV) such Bid does not contain evidence that the Person submitting it has received debt and/or equity funding commitments or available cash sufficient in the aggregate to finance the purchase contemplated thereby, including proof of deposit into escrow of no less than **$250,000** in cash; or (V) such bid is made by a competitor of seller to whom disclosure of information could not be made without significantly jeopardizing the sale of the Debtor's Assets at a price equal to or greater than the Purchase Price (each bid that satisfies the criteria set forth in sub-paragraphs 19(d) and (e) and also is not excluded pursuant to this sub-paragraph 19(f) constitutes a "Qualifying Bid")

(g) Prior to the Bid Deadline, a Competitive Bidder must deliver to the Debtor a deposit, by wire transfer of immediately available funds or certified check, in the amount of $250,000.00 (the "Deposit"):

(h) Competing Bids must be accompanied by: (i) the latest available certified financial statement and such subsequent financial statements and other financial information concerning the Competitive Bidder which would enable the CSO to evaluate the Competitive Bidder's ability to satisfy its obligations under the Competing Bid; and (ii) other evidence of the Competitive Bidder's ability to close the acquisition of the assets in a timely manner.

(i) If one or more Qualifying Bids are submitted by the Bid Deadline, the Debtor shall convene an outcry auction to be held on January 11, 2010 at the office and under the supervision of the CSO (the "Auction"), at which Auction only the Competitive Bidders that submitted Qualifying Bids, Household, the Debtor's pre-petition and post-petition lenders, any official committee appointed in this case and the United States Trustee shall be entitled to participate as provided herein, unless otherwise agreed to by Household.

(j) At the Auction, the CSO shall have the right to select the highest or best Bid from Household and any Competitive Bidders who submitted a Qualifying Bid (the "Highest or Best Bid"), which will be determined by considering, among other things: (A) the number, type, and nature of any changes to this Agreement requested by each Competitive Bidder; (B) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtor of such modifications or delay, including potential decrease in purchase sale price of the Debtor's Assets if not sold by the Closing Date, as defined in the Household Purchase Agreement; (C) the total consideration to be

received by the Debtor; (D) the likelihood of the Competitive Bidder's ability to close a transaction and the timing thereof; and (E) the net benefit to the estate, taking into account Household's rights to the Reimbursements

(k) At the Auction, all Qualified Bidders shall have the right to: (A) submit further Bids along with a markup of this Agreement and (B) at any time, request that the CSO announce, subject to any potential new Qualified Bids, the then current Highest or Best Bid and, to the extent a Qualified Bidder requests, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the CSO's announcement of the then current Highest or Best Bid.

(l) If the person submitting the Highest or Best Bid (the "Prevailing Party") fails to perform its obligation pursuant to the terms of its Highest or Best Bid (and if Debtor is not in material breach of its obligations thereunder), its Deposit shall be retained by Debtor as liquidated damages. The Deposit shall be returned to the Competitive Bidder if the Court does not approve its Competing Bid.

(m) After the Sale Hearing, the Debtor promptly shall return any Deposit received in connection with the submission of an unsuccessful Competing Bid. Any Deposit received from a Prevailing Party shall be applied to its purchase price on the closing of the Sale pursuant to the Sale Order, or released to the Debtor upon termination of the Sale upon default by the Prevailing Party.

**SALE OF ASSETS UNDER SECTION
363 OF THE BANKRUPTCY CODE**

20. Debtor requests that the Court authorize the sale of the Assets pursuant to Section 363 of the Bankruptcy Code free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the sale proceeds.

21. Section 363(b) of the Bankruptcy Code authorizes the sale of property of the estate other than in the ordinary course of business, after notice and a hearing. A sale of assets outside the ordinary course of business is a matter within the Court's discretion. Courts generally permit a debtor to sell property of the estate outside of the ordinary course where the proposed sale is a sound exercise of the debtor's business judgment and when such sale is for fair and reasonable consideration and is in good faith. See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2nd Cir. 1983); In re Channel One Comm., Inc., 117 B.R. 493, 496 (E.D. Mo. 1990); In re Apex Oil Co., 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988).

22. The Debtor has determined that, in its business judgment, the Sale of the Assets to Household in accordance with the terms of the Household Purchase Agreement (or to another bidder making a higher and better offer for the Assets in accordance with the Proposed Bidding Procedures) is in the best interest of Debtor's Chapter 11 estate and creditors. The Proposed Sale of the Assets is for fair and reasonable consideration, is in good faith, does not unfairly benefit any insiders or creditors of the Debtor, and will maximize the value of the Debtor's estate.

## SALE FREE AND CLEAR OF ALL LIENS

23. Section 363(f) of the Bankruptcy Code authorizes a debtor to use, sell or lease property of the estate outside of the ordinary course of business free and clear of any interest in such property. Under the Proposed Sale, the Assets are to be sold free and clear of all liens, claims and encumbrances with any such liens, claims and encumbrances to attach to the net sale proceeds with the same validity, priority, force and effect that such liens, claims and encumbrances had on such assets prior to the closing of the Proposed Sale. Alternatively, in the event that a Competitive Bidder makes a higher and better offer for the Assets, the Assets are to be sold to such party free and clear of all liens, claims and encumbrances with any such liens, claims and encumbrances to attach to the net sale proceeds with the same validity, priority, force and effect that such liens, claims and encumbrances had on such assets prior to the closing of the transaction.

24. Here, certain lenders to Debtors hold valid, properly perfected liens upon and security interests in the Assets.

25. Under Section 363(f)(2) of the Bankruptcy Code, a sale free and clear of liens is permissible if, among other things, (i) the secured lienholders consent, or (ii) the liens will be paid in full. The Debtors' secured lienholders will be paid in full by the proceeds of sale of the Assets pursuant to the Household Purchase Agreement as the Purchase Price contemplates payment in full of each of the Senior

Secured Debt, the Subordinated Debt and the DIP Debt, each as defined in the Household Purchase Agreement.

26. The sale should also be free and clear of any potential anti-dumping liabilities of the sort described in the Declaration of Mark J. Brown in Support of First Day Motions, filed on November 21, 2009 (Dkt. 12). The imposition of the anti-dumping duties is presently on appeal and as such are in bond fide dispute within the meaning of Section 363(f)(4).

### ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE

27. The assumption and assignment of certain executory contracts and unexpired leases are an integral part of the Proposed Sale and should be approved by the Court. Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume an executory contract or unexpired lease subject to the Court's approval. Section 365(b) of the Bankruptcy Code requires the debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed.

28. The standard for determining whether an executory contract or unexpired lease should be assumed is the debtor's "business judgment" that assumption is in its economic best interests. In re Food Barn Stores, Inc., 107 F.3d 558, 567 n. 16 (8th Cir. 1996). The Debtor will establish at the hearing to consider this Motion that adequate business justifications exist that merit judicial approval of the proposed assumptions and assignments.

29. The Debtor requests the Court to approve the assumption and assignment of those executory contracts and unexpired leases set forth on Schedule 2.1(a)(v) to the Household Purchase Agreement.

30. The Debtor will promptly cure any and all defaults under contracts or leases actually assumed and assigned at the time of the assumption and assignment.

31. Following the entry of the Sale Order, the Debtor shall serve all parties to executory contracts and unexpired leases with a copy of this Motion (exclusive of exhibits, but with a notice that copies of the exhibits may be obtained upon request from counsel for the Debtor) and the Sale Order.

### ALLOCATION AND PAYMENT OF SALE PROCEEDS

32. The Debtor requests that the Court approve payment of the proceeds received from the Prevailing Party as follows:

    (a) First, in payment in full of all secured debt owed to Enterprise Bank and Trust Company and Eagle Fund I, L.P.;

    (b) Second, in the event that Household is not the Prevailing Party, in payment of the Expense Reimbursement;

    (c) Third, in payment of Baxter and CCP's commission;

    (d) Fourth, any and all remaining sums to the Debtor, to be distributed through a further order(s) of the Court

WHEREFORE the Debtor hereby respectfully requests:

    (a) Entry of a Procedures Order following the Sale Procedures Hearing (i) approving the Proposed Bidding Procedures, and (ii) authorizing payment of the Expense Reimbursement to Household under the terms and conditions set forth in the Household Purchase Agreement; and

    (b) Entry of a Sale Order following the Sale Hearing authorizing the Debtor (i) to sell the Assets to Household pursuant to the Household Purchase Agreement or, alternatively, in the event that Household is not the Prevailing Party, approving the sale of the Assets to the Prevailing Party and the payment of the Expense Reimbursement to Household, (ii) approving the assumption and assignment of executory contracts and unexpired leases included among the Assets, and (iii) take each of those steps outlined in the Household Purchase Agreement, or in the event that Household is not the Prevailing Party, those steps outlined in the Prevailing Party's form of purchase contract, to close the sale.

Respectfully submitted,

THOMPSON COBURN LLP

By  */s/ David A. Warfield*
    David A. Warfield, #4642
    Allison E. Graves, #5217003
    One US Bank Plaza
    St. Louis, Missouri  63101
    (314) 552-6015 (Phone)
    (314)-552-7015 (Fax)

Attorneys for Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 09-51928 |
| | ) | |
| WHITNEY DESIGN, INC., | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | Sale Procedures Hearing Date: December 2, 2009 |
| | ) | Sale Procedures Hearing Time: 10:00 a.m. |
| | ) | |
| | ) | **EXHIBIT SUMMARY FOR** |
| | ) | **MOTION FOR ORDERS (A)** |
| | ) | **AUTHORIZING SALE OF ASSETS FREE AND** |
| | ) | **CLEAR OF ALL LIENS, CLAIMS, AND** |
| | ) | **ENCUMBRANCES, SUBJECT TO HIGHER** |
| | ) | **AND BETTER OFFERS, (B) APPROVING THE** |
| | ) | **ASSUMPTION AND ASSIGNMENT OF** |
| | ) | **CERTAIN EXECUTORY CONTRACTS AND** |
| | ) | **UNEXPIRED LEASES, (C) ESTABLISHING SALE** |
| | ) | **AND BIDDING PROCEDURES, AND (D)** |
| | ) | **APPROVING EXPENSE REIMBURSEMENT, AND** |
| | ) | **(E) APPROVING COMPROMISE AND** |
| | ) | **SETTLEMENT** |
| | ) | |
| | ) | **David A. Warfield, #4642** |
| | ) | **Allison E. Graves, #5217003** |
| | ) | **THOMPSON COBURN LLP** |
| | ) | **One US Bank Plaza** |
| | ) | **St. Louis, MO 63101** |
| | ) | **(314) 552-6000 (Phone)** |
| | ) | **(314) 552-7000 (Fax)** |

Pursuant to L.B.R. 9040, the following exhibits are referenced in support of the above-referenced Motion:

    A.  Asset Sale and Purchase Agreement;

Copies of the Motion with all Exhibits are available from the undersigned upon request.

5038709

By  */s/ David A. Warfield*
　　David A. Warfield, #4642
　　Allison E. Graves, #5217003
　　One US Bank Plaza
　　St. Louis, Missouri  63101
　　(314) 552-6015 (Phone)
　　(314)-552-7015 (Fax)

Attorneys for Debtor and Debtor-in-Possession