UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re:  WHITNEY DESIGN, INC. | ) | |
| | ) | Case No. 09- 51928-705 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| WHITNEY DESIGN, INC., | ) | |
| Movant, | ) | **MTN 31** |
| | ) | Response Due: January 8, 2010 |
| v. | ) | Hearing Date:  January 14, 2010 |
| | ) | Hearing Time:  9:30 a.m. (CST) |
| UNITED STATES OF AMERICA, | ) | Location: St. Louis, MO Courtroom 7 |
| Respondent. | ) | |

**OBJECTION OF THE UNITED STATES OF AMERICA TO MOTION FOR ORDERS (A) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES SUBJECT TO HIGHER AND BETTER OFFERS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) ESTABLISHING SALE AND BIDDING PROCEDURES, AND (D) APPROVING EXPENSE REIMBURSEMENT**

The United States of America, on behalf of the Department of Commerce ("Commerce") and the Department of Homeland Security, U.S. Customs and Border Protection ("CBP") hereby objects to the Debtor Whitney Design Inc.'s *Motion for Orders (A) Authorizing Sale of Assets Free and Clear of All Liens, Claims and Encumbrances Subject to Higher and Better Offers, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Establishing Sale and Bidding Procedures, and (D) Approving Expense Reimbursement* (Docket No. 31) (the "Sale Motion").

## FACTUAL BACKGROUND

Debtor's Bankruptcy

1.      Debtor filed a petition for relief under chapter 11 of title 11 (the "Bankruptcy Code") on November 21, 2009, and has continued operations since then as a debtor-in-possession.

2.      Debtor is a wholly owned subsidiary of Tricor Consumer Products, Inc., the principal shareholders of which are James L. Glenn and Mark J. Brown. *Declaration of Mark J. Brown in Support of Chapter 11 Petition and Various First Day Pleadings* (Docket No.12) (the "Brown Declaration") at para. 6. Mr. Glenn is the Debtor's President and CEO, and Mr. Brown is the Debtor's Senior Vice President and CFO. Messrs. Glenn and Brown are the Debtor's only officers and directors. *State of Missouri, Secretary of State 2009 Annual Registration Form for Whitney Design, Inc., filed March 5, 2009.*[1]

3.      Debtor is in the business of importing and distributing household goods, including steel-top ironing boards, ironing board pads and covers, hampers, and sorters. It imports substantially all of its products from vendors in the People's Republic of China. *Brown Decl.* at paras. 7-8.

4.      On December 21, 2009, the Court entered its *Final Order (I) Authorizing Secured Postpetition Financing on a Superpriority Basis Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, and (III) Granting Adequate Protection Pursuant to Sections 363 and 364 of the Bankruptcy Code; and Notice of Deadline to Commence an Adversary Proceeding Pursuant to Federal Rule of Bankruptcy*

---

[1]      A true and correct copy of this Annual Report will be filed separately with the Court as Exhibit A to this Objection. A summary of the exhibits is attached to this Objection.

*Procedure 7001(2)* (the "Final DIP Order") (Docket No. 57).

     5.     The Final DIP Order authorized the Debtor to borrow postpetition up to $2,065,670 from its prepetition, first lien lender, Enterprise Bank & Trust Company ("Enterprise"). Significantly, while the Final DIP Order did create a carve out to the liens, replacement liens, superpriority claims and adequate protection claims granted to Enterprise and the Debtor's second lien lender, Eagle Fund I, L.P. ("Eagle"), it limited the carve out to $25,000. *Final DIP Order* at para. 7. Moreover, Enterprise's obligation to continue lending to the Debtor terminates on February 1, 2010. *Second Amendment to Loan and Security Agreement and First Amendment to Revolving Credit Note dated November 24, 2009 by and between Whitney Design, Inc., Tricor Consumer Products, Inc. and Enterpise Bank & Trust* (the "DIP Loan Agreement") at sec. 1.1.1.[2]

     6.     Debtor lists as an asset of its estate approximately $1.3 million in "U.S. Customs (Antidumping Deposits)". *Schedule of Assets and Liabilities, Schedule B - Personal Property* (Docket No. 47) (the "Schedules").

     7.     Debtor made potentially preferential transfers totaling **$6,194,413.85**. *Statement of Financial Affairs - Amended and Restated (Attachment to Question 3(b))* ("Amended SOFA") (Docket No. 53).[3] Of this amount, Debtor paid the following:

| Name | Amount Paid |
| --- | --- |
| Color Star Products Co, Ltd. | $973,388.95 |
| Foshan Shunde Yongjian | $553,363.40 |
| Maxplus Marketing Intl, Inc. | $447,763.00 |
| Tri-King (Asia) Limited | $250,138.42 |

---

    [2]     A true and correct copy of the DIP Loan Agreement will be filed separately with the Court as Exhibit B to this Objection.

    [3]     Question 3(b) of the Amended SOFA requires the Debtor to list each payment made to any creditor within ninety (90) days of the petition date.

| | |
|---|---|
| Favor Light Enterprise Limited | $243,509.00 |
| Phoenix International | $241,014.94 |
| Polster, Lieder, Woodruff | $227,460.33 |
| Garvey Schubert Baker | $ 55,172.07 |
| Coda International Ltd. | $ 37,889.46 |
| Summit Logistics International | $ 26,268.20 |
| Photo Source, Inc. | $ 20,568.98 |
| Crown Packaging Corp. | $ 20,290.44 |
| Wunderlich Fibre Box Co | $ 10,047.02. |

All of these entities are either Debtor's trade vendors or attorneys and are among the Debtors' twenty largest unsecured creditors. *Voluntary Petition (List of Creditors Holding Twenty Largest Unsecured Claims)* (Docket No. 1).

8.      Of the $6.19 million total listed in paragraph 6., Debtor paid **$792,519.18** to the following trade vendors that are **not** among the Debtor's twenty largest unsecured creditors:

| Name | Amount Paid |
|---|---|
| Fuzhou Jinlida Commodity Co | $234,129.07 |
| Smart Crown | $211,177.88 |
| Sunny Home Products Co., Ltd | $ 86,620.06 |
| Sharon Enterprises | $ 62,169.95 |
| Super Van Service Co. | $ 37,933.16 |
| Madison Mill, Inc. | $ 28,800.00 |
| Meyer Logistics | $ 24,915.00 |
| Atlas Reserve Temp. Inc. | $ 23,193.80 |
| Prestige Products | $ 22,121.40 |
| Homeworld | $ 17,935.00 |
| Merchandise Group | $ 17,446.60 |
| Pioneer Business Systems, Inc. | $ 15,459.00 |
| Kar Lai Handbag Mfg Co Ltd. | $ 10,558.26 |

*Amended SOFA, Attachment to Question 3(b)*.

The Sale Motion and Relevant Portions of the APA and Other Agreements

9.      The Sale Motion seeks authority to sell all of the Debtor's assets, including all cash,

equipment, machinery, inventory, account receivables, purchase orders, intellectual property, contracts, books and records, insurance policy proceeds and causes of action and claims of every kind and nature, including avoidance actions under chapter 5 of the Bankruptcy Code to Household Essentials, LLC ("Household Essentials"). *Asset Purchase Agreement by and between Household Essentials, LLC, as Buyer and Whitney Design, Inc. dated November 25, 2009* (the "*APA*") Art. II, sec. 2.1.[4] The APA leaves the Debtor with nothing of value. *Id.* at Art. II, sec. 2.3 (listing the assets excluded from the sale).

10.     The Debtor's two principals, Messrs. Glenn and Brown, formed Household Essentials in order to buy the Debtor's assets. *Brown Decl.* at para. 32.

11.     The APA states that "claims, including Claims, deposits, including those made by [Debtor] with respect to the import of goods and/or duties related thereto" shall be sold to Household Essentials. *APA*, Art. II, sec. 2.1.

12.     The APA further recites that "all causes of action, including Avoidance Actions" shall be sold to Household Essentials. *Id*. at Art. II, sec. 2.1(a)(xxiii). The APA defines "Avoidance Actions" as "a right to recover, or to obtain other relief arising under or referenced in: § 550 of the Bankruptcy Code; the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act as enacted in any state, or any other law providing for recovery of consideration given, or reversal of any transfer by or for the benefit of Seller [the Debtor]." *Id.* at Ex. A.

13.     The proposed purchase price for all of the Debtor's assets is $8,729,500, *Sale Motion* at para. 14, but the APA permits Household Essentials to pay that purchase price through submission

---

[4]     A true and correct copy of the APA will be filed separately with the Court as Exhibit C to this Objection.

of a "Credit Bid", *APA* at Art. III, sec. 3.1, which is defined as Household Essentials' "exercise of Lenders credit bid rights pursuant to Section 363(k) of the Bankruptcy Code for the Acquired Assets in the full amount of the Lender Debt," *id*. at Ex. A, p. 26. Lender Debt is the amount of the Debtor's secured debt obligations to Enterprise and Eagle Fund. *Id*. at Ex. A, p. 28. Hence, Household Essentials is paying no cash consideration for the Debtor's assets.

14.     Household Essentials purportedly acquired the rights to credit bid Enterprise's and Eagle Fund's secured claims via a Credit Bid Agreement dated November 21, 2009, by and between Enterprise, Eagle Fund, Household Essentials and 314 Holdings, LLC (the "Credit Bid Agreement").[5]

<u>Imposition of Antidumping Duties</u>

15.     Commerce enforces laws and agreements to protect U.S. businesses from unfair competition within the U.S. resulting from unfair pricing by foreign companies and unfair subsidies to foreign companies by their governments.

16.     One example of such unfair pricing is dumping, 19 U.S.C. § 1677(34), which occurs when a foreign producer sells a product in the United States at a price that is below that producer's sales price in the country of origin or at a price that is lower than the cost of production. 19 U.S.C. § 1677(35). The difference between the price (or cost) in the foreign market and the price in the U.S. market is called the "dumping margin." 19 U.S.C. § 1673.

17.     If an industry in the United States believes that dumping of a foreign product is causing it injury, it may file a petition with both Commerce and the United States International Trade

---

[5]     A true and correct copy of the Credit Bid Agreement will be filed separately with the Court as Exhibit D to this Objection.

Commission ("ITC").  Commerce then investigates foreign producers to determine whether dumping

has occurred and if so, calculates the amount of dumping in accordance with its regulations.  19

U.S.C. § 1671d; 19 C.F.R. Part 351 et al.

18.     If both Commerce and the ITC make affirmative findings of dumping and injury,

Commerce instructs CBP to assess duties against imports of that product into the United States. The

duties are assessed as a percentage of the value of the imports and are equivalent to the dumping

described above.  19 U.S.C. § 1671e.

19.     As courts have noted, the duties Congress created through these statutes "are not

penal in nature, but are 'additional duties' to equalize competitive conditions between the exporter

and [affected U.S. industries]." *Union Camp Corp. v. United States*, 22 CIT 267, 278, 8 F. Supp. 2d

842, 852 (1998).  Hence, these duties serve an important public policy function recognized by

Congress.

20.     As Debtor has described, *Brown Decl.* at paras. 19-27, it has imported goods from

foreign manufacturers that have been the subject of Commerce anti-dumping orders and duties.

*See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty*

*Order: Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's*

*Republic of China*, 69 Fed. Reg. 47,868 (Dep't of Commerce Aug. 6, 2004).

Collection of Antidumping Duties

21.     When an importer, such as the Debtor, wishes to import merchandise into the United

States, it must make an entry by filing documentation with CBP. This documentation enables CBP

to properly assess the duties due on the merchandise.  19 U.S.C. § 1484.

22.     At the time of entry, the importer must also deposit estimated duties with CBP.  19

U.S.C. § 1505(a) (""[T]he importer of record shall deposit with the Customs Service at the time of entry . . . the amount of duties and fees estimated to be payable on such merchandise.").  After the proper documents are filed and the estimated duties are deposited, the imported merchandise can pass into the commerce of the United States.  19 U.S.C. § 1490.

23.     CBP then reviews the entry and makes its final determination as to whether the amount of duty deposited is correct.  This is called liquidation of an entry.  19 C.F.R. §§ 159.0-.12 (2009).  Liquidation is CBP's final computation or ascertainment of the duties accruing on an entry.  19 C.F.R. § 159.1.  As a result of liquidating an entry, CBP will collect any increased duties due or refund any excess of the estimated duties deposited.  19 U.S.C. § 1505(b).

24.     Here, Debtor has deposited with CBP approximately $1.3 million in estimated duties due on imported goods possibly subject to Commerce anti-dumping orders (the "Estimated Duties").  Upon information and belief, it is this amount that the Debtor has listed as an asset of its estate.

ARGUMENT

The Proposed Sale Is Not Justified Under Section 363(b) and Household Essentials Is Not a Good Faith Purchaser

25.     "[I]n the absence of the protection and finality offered by a disclosure statement and plan, [a sale] pursuant to Section 363(b) requires specific authorization by the Court. . . [and] must be closely scrutinized, and the proponent bears a heightened burden of proving the elements necessary for authorization."  *In re Channel One Comms., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).  Those elements include: (1) a sound business purpose for the sale without a disclosure statement and plan; (2) accurate and reasonable notice of the sale; (3) a fair and reasonable sale price; and (4) a sale that does not unfairly benefit insiders or the prospective purchasers, or unfairly favor

a creditor or class of creditors. *Id.* A debtor's evidence in support of a section 363(b) motion must establish a "good business reason" for the sale. *Id.* (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). The Sale Motion fails to satisfy these criteria, and indeed, coupled with the Debtor's other disclosures noted above, raises substantial questions regarding the Debtor's and Household Essentials' good faith.

26.     First, given the complete breadth of the assets sold under the APA, nothing will be left in Debtor's estate to administer – it will be an empty shell with no assets of any type. Even a liquidating plan is futile as there will be nothing to administer. Moreover, given the termination of the DIP financing on February 1, 2010, no funds will be available to pay for such an administration. Indeed, conversion to chapter 7 is not even an option given the absence of assets or availability of funds. If the Court approves the Sale Motion, dismissal is the only viable option, which is clearly a result at odds with the fundamental purposes of bankruptcy. *See, e.g., In re Gulf Coast Oil Corp.*, 404 B.R. 407, 426 (Bankr. S.D. Tex. 2009) ("If the proposed transaction will not even pay all of the expenses of the bankruptcy proceeding, it would be especially difficult to understand why the purchaser should get the benefit of extraordinary bankruptcy powers and remedies for which it did not pay.").

27.     Second, given the alleged credit bid right Household Essentials will exercise, no cash proceeds will flow to the estate. The proposed sale generates no return to unsecured or even administrative creditors. The secured creditors, Enterprise and Eagle Fund, are the only class of creditors benefitting from the sale. Transcript of December 2, 2009 Hearing (*December 2 Transcript*") at 51 (statement of counsel to Household Essentials that "[t]here's no proof that there's

any value to the assets of Whitney above and beyond the secured lenders.").[6] Yet, the Sale Motion does not "explain why the sale should take place in a bankruptcy case and why the bankruptcy court should provide the benefits for which Congress imposed substantial requirements." *In re Gulf Coast Oil Corp.*, 404 B.R. at 426.

28.     Third, Debtor made significant potentially preferential payments to its trade creditors and attorneys in an aggregate amount that nearly equals the purported purchase price under the APA. Immediately before the petition date, the Debtor also transferred valuable purchase orders to a nondebtor related company. *Credit Bid Agreement* at p. 2 ("[Debtor] has assigned to 314 Holdings certain rights under two series of purchase orders."). Given that the claims to recover these payments or avoid such transfers are to be sold under the APA, the fairness and reasonableness of the purchase price is highly suspect. Moreover, when the purchase price comes in the form of a credit bid submitted by an entity not holding the underlying secured claim, the proposed purchase is indisputably not fair and reasonable – it is non-existent.[7]

29.     Fourth, the payments to Debtor's trade creditors and attorneys enabled Debtor's principals to maintain business relationships with previously unsecured creditors of the Debtor, thus facilitating a seamless transition to their doing business via the Debtor's new company, Household Essentials. To demonstrate, the Debtor's total projected "disbursements" or expenses from the petition date to the end of January 2010 are $6,473,000. *Final DIP Order, Ex. B* ("*2009 11 22 Cash*

---

[6]     A true and correct copy of the relevant pages from the December 2, 2009 Hearing will be filed separately with the Court as Exhibit E to this Objection.

[7]     The Sale Motion asserts that "[t]he offer submitted by Household [Essentials] is the highest and best of the proposals that the Debtor has received for the Assets." *Sale Motion* at para. 12. To date, there is no evidence to support this assertion or any assertion that the Debtor's assets have been aggressively marketed so as to obtain maximum value for the estate.

*Flow Rollforward*") at 1.[8]  This amount is only slightly more than $6.19 million the Debtor paid its favored creditors in the ninety-day preference period when it had no trade credit terms or financing availability but was preparing for bankruptcy.  *December 2 Transcript* at 33.  Debtor paid the entire outstanding indebtedness of certain substantial creditors as they do not even appear on the list of twenty largest unsecured creditors.  *See, supra, para. 8.*  Clearly, Debtor's payments were intended to insure business relationships with Household Essentials post-sale.

30.     Particularly anomalous was Debtor's $553,363.40 aggregate payment to Foshan Shunde even though Debtor had decided in September 2009 to stop selling the steel-top ironing boards it purchased from Foshan Shunde.  *Brown Decl.* at para. 28.[9]  Hence, on the precipice of bankruptcy, Debtor was shoving cash out the door to its unsecured creditors, even to those foreign vendors whose goods the Debtor was no longer going to buy.

31.     Fifth, the sale is intended to avoid liability to a single creditor and otherwise, continue the Debtor's operations in a  business as usual status, with the same principals, employees, secured lenders, attorneys and vendors.  As the Debtor concedes, a principal business purpose for the sale is to avoid liability to CBP and obtain credit terms from Chinese manufacturers for the importation of more goods.  *December 2 Transcript* at 36 ("Mr. Glenn would testify that he's had discussions with Chinese vendors about the proposed sale.  That the Chinese vendors have indicated that if there is a new company that acquires the assets free and clear of the antidumping liabilities, that the

---

[8]     Exhibit B to the Final DIP Order has not been filed with court.  A true and correct copy of that exhibit will be separately with the Court as Exhibit F to this Objection.

[9]     Debtor also managed to squeeze out a $22,914.61 wire transfer to Since Hardware, *Amended SOFA (Attachment to Question 3(b),* - the entity from whom it stopped buying ironing boards in March 2009 due to the imposition of the anti-dumping duty, *Brown Decl.* at para. 28.

Chinese vendors will open up trade credit terms to that new company.").

32. Household Essentials does not even expect any competing offers. As its counsel stated at the December 2 hearing, "[i]t is unlikely that any other party is going to come forward and beat this bid," *December 2 Transcript* at 50, because Household Essentials had made a "substantial offer." But that offer is simply the noncash credit bid of other creditors' claim. It is not surprising then that no other offers will come forward. Household's use of the credit bid has preordained a sale to the Debtor's insiders.

33. Indeed, it is the Debtor's principals, the owners of Household Essentials, that unfairly benefit from this sale via an unbroken continuation of their business. In such a case, a court need not defer to a debtor's business judgment. *In re Gulf Coast Oil Corp.*, 404 B.R. at 424.

34. In sum, the Sale Motion seeks approval of a sale that:

– terminates not just the Debtor, but the Debtor's bankruptcy estate;

– generates no return except for one class of creditors;

– garners no proceeds let alone a fair and reasonable purchase price;

– unfairly benefits the Debtor's insiders by permitting them to continue business as usual post-sale through the use of estate assets to prefer key trade creditors; and

– does not have a sound business purpose other than to avoid liability to a single creditor.

35. Courts have had no hesitation denying sale motions under similar circumstances. *In re Gulf Coast Oil Corp.*, 404 B.R. at 427-28; *In re Golf, L.L.C.*, 322 B.R. 874, 878 (Bankr. D. Neb. 2004) (denying sale motion that benefits only administrative claimants); *In re Encore Healthcare Assocs.*, 312 B.R. 52, 57 (Bankr. E.D. Pa. 2004) (denying motion to sell debtor's only asset which was filed at secured creditor's insistence and benefitted only the secured creditor); *In re The*

*Landing*, 156 B.R. 246, 250 (Bankr. E.D. Mo. 1993) (denying sale motion, in part, due to unresolved questions regarding treatment of debtor's remaining liabilities).

<u>Household Essentials Cannot Credit Bid Under Section 363(k)</u>

36.     Section 363(k) provides:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise *the holder of such claim may bid at such sale*, and, if the holder of such claim purchases such property, *such holder may offset such claim against the purchase price of such property*.

11 U.S.C. § 363(k) (emphasis added).

37.     "The intent of Section 363(k) is clearly to permit only those persons with a valid security interest in property to be sold to claim a setoff."  *Bank of Nova Scotia v. St. Croix Hotel Corp.* (*In re St. Croix Hotel Corp.*), 44 B.R. 277, 279 (Bankr. D.V.I. 1984).  Accordingly, "while a secured creditor may setoff its allowed secured claims against the purchase price of a property of estate to be sold by the [t]rustee pursuant to § 363(k), there is no comparable provision which would permit unsecured creditors to offset their claims." *In re Moritz*, 162 B.R. 618, 618 (Bankr. M.D. Fla. 1994).

38.     Households Essentials is not the holder of any type of claim let alone an allowed secured claim as section 363(k) explicitly requires.  Rather, Household Essentials holds only a proxy to exercise the credit bid rights of the secured creditors, Enterprise and Eagle Fund, *Credit Bid Agreement* at 4, para. 4.  As a proxy, Household is merely "[o]ne who is authorized to act as a substitute for another," *Black's Law Dictionary* (8th ed. 2004), and even that right is subject to and conditioned upon the satisfaction of several express conditions, including Household Essentials' assumption of all the Debtor's debt obligations to Enterprise and Eagle Fund. *Credit Bid Agreement*

-13-

at p.5, para. 4(b).

39.     Enterprise and Eagle Fund have not assigned, transferred or conveyed their secured claims against the Debtor to Household Essentials.  Indeed, they have expressly agreed not to sell those claims.  *Id.* at p. 5, para. 5 ("Neither Enterprise nor Eagle shall sell their secured claims.").  For purposes of section 363(k), they remain the holders of allowed secured claims against property of the Debtor's estate.  As such, they are the only entities entitled to exercise credit bid rights under section 363(k).  By the express language of that section, Household Essentials cannot do so notwithstanding any private agreement allegedly to the contrary.

<u>The Estimated Duties Are Not Property of the Debtor's Estate and Cannot Be Sold</u>

40.     Notwithstanding the Debtor's Schedules, the Estimated Duties on deposit with CBP are not property of the estate.  While no court has directly so held, courts have held in the analogous circumstance that estimated payments on a debtor's potential tax liability are not property of the estate.  *See, e.g.*, *Kuntz v. United States* (*In re Halle*), 132 B.R. 186, 190-91 (Bankr. D. Colo. 1991) (dismissing section 542  turnover complaint after holding that debtor's estimated prepetition tax payments to IRS were not property of the estate); *Grant v. United* States (*In re Simmons*), 124 B.R. 606, 608 (Bankr. M.D. Fla. 1991)  (holding estimated prepetition tax payments were not property of the estate); *Wittman v. United States* (*In re Weir*), 1990 WL 63072 *2 (Bankr. D. Kan. 1990) (same).

41.     The Estimated Duties are virtually identical to the estimated tax payments.  They are statutorily required estimated payments paid to a federal agency subject to a final liability determination, i.e., liquidation of an entry, which can result in either the collection of additional payments or the refund of any estimated payments in excess of the determined liability.  19 U.S.C.

§ 1505(b). Accordingly, the Estimated Duties are not property of the estate. At best, Debtor has a contingent chose in action for a refund. *Id.*

42.     "Sales of property under § 363(f) are limited to sales of property of the bankruptcy estate." *Central State Bank v. McCabe* (*In re McCabe*), 302 B.R. 873, 877 (Bankr. N.D. Iowa 2003); *In re Signal Hill-Liberia Ave Ltd.*, 189 B.R. 648,652 (Bankr. E.D. Va. 1995) (same). This is so because "[n]either section 363 nor any other provision of the Bankruptcy Code gives the bankruptcy court the power to enhance or improve whatever ownership interest was held by the debtor prepetition that became property of the estate." *In re Mirant Corp.*, 389 B.R. 481, 492 (Bankr. N.D. Tex. 2008) (citing *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir. 1985)). Hence, because the Estimated Duties are not property of the estate, the Debtor cannot sell them. Thus, the APA's provisions suggesting a contrary outcome are meritless.

The Avoidance Actions Cannot Be Sold

43.     Case law, before and after the enactment of the Bankruptcy Code, is clear: avoidance actions cannot be conveyed, transferred or sold. *Belding-Hall Mfg. Co. v. Mercer & Ferdon Lumber Co.*, 175 F. 335 (6th Cir. 1909) ("He [the trustee] may not transfer to another th[e] right of avoidance."); *LWD Land Co. v. Official Unsecured Creditor's Comm.* (*In re LWD, Inc.*), 2007 WL 1035149 *8 (W.D. Ky. 2007) ("Chapter 5 claims cannot be transferred."); *McCarthy v. Navistar Fin. Corp.* (*In re Vogel Van & Storage, Inc.*), 210 B.R. 27, 32 (N.D.N.Y. 1997) ("[I]t is also a 'well-settled principle that neither a trustee in bankruptcy, nor a debtor-in-possession, can assign, sell, or otherwise transfer a right to maintain a suit to avoid a preference."); *Hill v. Gibson Dunn & Crutcher LLP* (*In re MS55, Inc.)*, 2009 WL 4715904 *9 (Bankr. D. Colo. 2009) ("[T]here is no statutory mechanism for transferring the trustee's Chapter 5 powers to a single creditor which does not act to

benefit the estate."); *Texas Gen. Petroleum Corp. V. S.B. Evans* (*In re Texas Gen. Petroleum Corp.*), 58 B.R. 357, 358 (Bankr. S.D. Tex. 1986) ("[N]either a trustee in bankruptcy nor a debtor-in-possession can assign, sell, or otherwise transfer, the right to maintain a suit to avoid a preference.").

44.     Section 550(a)'s unambiguous language mandates this outcome: it must be the trustee who retains the right to prosecute the recovery action, and the estate must benefit from the recovery. 11 U.S.C. § 550(a).   The proposed sale of the Avoidance Actions under the APA violates this language, and this violation is particularly acute here given that the nearly $6.2 million in potentially preferential transfers represents seventy-one percent (71%) of the alleged consideration under the APA.

45.     Hence, any attempt to transfer the avoidance actions is ineffective and void as a matter of law. *In re LWD, Inc.*, 2007 WL 1035149 *8; *In re MS55, Inc.*, 2009 WL 4715904 *10; *In re Texas Gen. Petroleum Corp.*, 58 B.R. at 358.   And, any alleged consideration provided the Debtor's estate under the APA by Household Essential does not alter this result.  *Consolidated Pet Foods, Inc. V. Millard Refrigerated Sevs., Inc.* (*In re S & D Foods, Inc.*), 110 B.R. 34, 36-37 (Bankr. D. Colo. 1990).

### CBP's Claims Are Not Subject to Section 363(f)

46.     Debtor contends that its assets can be sold free and clear of CBP's claims under section 363(f)(4) because "[t]he imposition of the anti-dumping duties is on appeal and as such are in bona fide dispute within the meaning section 363(f)(4)." Motion at para. 26.  Debtor is incorrect.

47.     Section 363(f) does not apply to CBP's potential unsecured claims as that section encompasses only secured claims and interests in property.  *Schwinn Cycling & Fitness, Inc. v. Benonis* (*In re Schwinn Bicycle Co.*), 210 B.R. 747, 761 (Bankr. N.D. Ill. 1997) (holding that section

363(f) "in no way protects the buyer from current or future product liability; it only protects the purchased assets from lien claims against those assets"); *Fairchild Aircraft Corp. v. Campbell* (*In re Fairchild Aircraft Corp.*), 184 B.R 910, 918 (Bankr. W.D. Tex. 1995)*, vacated as moot on equitable grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc.* (*In re White Motor Credit Corp.*), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that "[g]eneral unsecured claimants including tort claimants, have no specific interest in a debtor's property" for purposes of section 363(f)); *see also In re Eleveth Mines, LLC*, 312 B.R. 634, 654-55 (Bankr. D. Minn.) (holding that state taxing authority's use of debtor's pre-sale production experience was not an "interest" in property subject to section 363(f)), *remanded with instructions to abstain*, 318 B.R. 682 (B.A.P. 8th Cir. 2004); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.3d 1132, 1145-46 (6th Cir. 1991) (holding that debtor's experience history under state unemployment compensation program was not an "interest" subject to section 363(f)); *In re Welker*, 163 B.R. 488, 489 (Bankr. N.D. Tex. 1994) (holding section 363(f) did not authorize sale of real property free and clear of requirements in federal statutes and HUD's regulatory agreement with debtor).[10]

48.     Accordingly, section 363(f) does not apply to CBP's claims, and the Debtor's assets cannot be sold free and clear of them.

---

[10]     CBP acknowledges that recent circuit court decisions as well as a bankruptcy court decision from another district in the Eighth Circuit hold to the contrary. *In re Trans World Airlines, Inc.*, 322 F.3d 283, 290 (3d Cir. 2003); *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co.* (*In re Leckie Smokeless Coal Co.*), 99 F.3d 573, 582 (4th Cir. 1996); *In re Creative Restaurant Mgmt., Inc.*, 141 B.R. 173, 178 (Bankr. W.D. Mo. 1992); *cf. In re Chrysler LLC*, 576 F.3d 108, 126 (2d Cir.), *vacated, Indiana State Police Pension Trust v. Chrysler LLC*, – S. Ct. –, 2009 WL 2844364 (2009).

<u>CBP Is Entitled to Adequate Protection Under Section 363(e)</u>

49.     To the extent the Court holds that CBP's claims are interests in property that can be sold free and clear under section 363(f), CBP requests adequate protection pursuant to section 363(e), which provides in relevant part:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

50.     This section "requires the court when selling property under Section 363 'to provide adequate protection' of any interest in the property being sold free and clear of that interest." *In re Dewey Ranch Hockey, LLC*, 414 B.R. 577, 591 (Bankr. D. Ariz. 2009). "The requirement of adequate protection in Section 363(e) is mandatory. If adequate protection cannot be provided, such sale must be prohibited." *Id.* at 592. The Debtor bears the burden of proof by a preponderance of the evidence to demonstrate adequate protection exists. 11 U.S.C. § 363(p); *In re Equity Mgt. Sys.*, 149 B.R. 120, 124 (Bankr. S.D. Iowa 1993).

51.     "Most often, adequate protection in connection with the sale free and clear of other interests will be to have those interests attached to the proceeds of the sale." House Rep. No. 95-595, 95th Cong., 1st Sess. 345 (1977); *see also Union Planters Bank, N.A. v. Burns* (*In re Gaylord Grain L.L.C.*, 306 B.R. 624, 629 (B.A.P. 8th Cir. 2004) ("Ordinarily, when the trustee proposes to sell property free and clear of an interest in property, the bankruptcy court grants a replacement lien in the proceeds of the sale as a condition of the sale.").

52.     That, however, is not likely an option here because, the sale to Household Essentials

will not generate any proceeds above those necessary to satisfy the liens of Enterprise and Eagle Fund. Moreover, if approved, the Motion will leave the Debtor's estate with no assets or even the prospect of having any assets distributable to unsecured or administrative creditors because (1) all of the Avoidance Actions will have been sold and (2) the Final DIP Financing Order provides no mechanism for funding the continued administration of the Debtor's estate.

53.     Because the Debtor cannot provide adequate protection for CBP's claims, the Motion should be denied. *See In re Magness*, 972 F.2d 689, 697 (6th Cir. 1992); *In re Dewey Ranch Hockey*, 414 B.R. at 591-92.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny the Sale Motion.

This 8th[th] day of January 2010.

Respectfully submitted,

TONY WEST
Assistant Attorney General

MICHAEL W. REAP
Acting United States Attorney

Wesley Wedemeyer
Assistant United States Attorney
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-3900
(314) 539-2309 (f)

_//s// Matthew J. Troy_

J. CHRISTOPHER KOHN
TRACY J. WHITAKER
MATTHEW J. TROY
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
(202) 514-9038
(202) 307-0494 (f)

Attorneys for the United States of America

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: WHITNEY DESIGN, INC. | ) | |
| | ) | Case No. 09- 51928-705 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WHITNEY DESIGN, INC., | ) | |
| Movant, | ) | **MTN 31** |
| | ) | Response Due: January 8, 2010 |
| v. | ) | Hearing Date: January 14, 2010 |
| | ) | Hearing Time: 9:30 a.m. (CST) |
| UNITED STATES OF AMERICA, | ) | Location: St. Louis, MO Courtroom 7 |
| Respondent. | ) | |

**EXHIBIT SUMMARY FOR OBJECTION OF THE UNITED STATES OF AMERICA
TO MOTION FOR ORDERS (A) AUTHORIZING SALE OF ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES SUBJECT TO HIGHER
AND BETTER OFFERS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) ESTABLISHING
SALE AND BIDDING PROCEDURES, AND
(D) APPROVING EXPENSE REIMBURSEMENT**

Pursuant to L.B.R. 9040, the following exhibits are referenced in support of the above

referenced objection:

| Exhibit | Description |
|---|---|
| A | State of Missouri, Secretary of State 2009 Annual Registration Form for Whitney Design, Inc., filed March 5, 2009. |
| B | Second Amendment to Loan and Security Agreement and First Amendment to Revolving Credit Note dated November 24, 2009 by and between Whitney Design, Inc., Tricor Consumer Products, Inc. and Enterpise Bank & Trust (the "DIP Loan Agreement") |
| C | Asset Purchase Agreement by and between Household Essentials, LLC, as Buyer and Whitney Design, Inc. |

|   | dated November 25, 2009 (the "APA") |
|---|---|
| D | Credit Bid Agreement dated November 21, 2009 by and between Enterprise, Eagle Fund, Household Essentials and 314 Holdings, LLC (the "Credit Bid Agreement") |
| E | Relevant Pages from December 2, 2009 Hearing Transcript (the "December 2 Transcript") |
| F | Exhibit B to Final DIP Order ("2009 11 22 Cash Flow Rollforward") |

This 8th day of January 2010.

Respectfully submitted
TONY WEST
Assistant Attorney General

MICHAEL W. REAP
Acting United States Attorney

Wesley Wedemeyer
Assistant United States Attorney
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-3900
(314) 539-2309 (f)


*//s// Matthew J. Troy*
J. CHRISTOPHER KOHN
TRACY J. WHITAKER
MATTHEW J. TROY
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
(202) 514-9038
(202) 307-0494 (f)

Attorneys for the United States of America

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of January 2010 a copy of the foregoing motion was filed electronically with the Clerk of the Court, and served electronically upon participants in the Court's CM/ECF system, including:

Office of the United States Trustee
111 S. 10th Street, Suite 6353
St. Louis, MO 63102

David A. Warfield
Thompson Coburn, LLP
One US Bank Plaza
St. Louis, MO 63101

David A. Sosne
Summers Compton Wells PC
8909 Ladue Road
St. Louis, MO 63124

Marshall C. Turner
Husch Blackwell Sanders LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

Gregory D. Willard
Bryan Cave
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102-2750

John Talbot Sant
Armstrong Teasdale, LLP
One Metropolitan Square
Suite 2600
St. Louis, MO 63102-2740

*//s// Matthew J. Troy*
Matthew J. Troy
Attorney for the United States of America