UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

In re:                              )        Chapter 11
                                    )
WHITNEY DESIGN, INC.,               )        Case No. 09-51928
                                    )
            Debtor.                 )
                                    )

***DEBTOR'S RESPONSE TO THE OBJECTION OF THE UNTIED STATES OF AMERICA
TO MOTION FOR ORDERS (A) AUTHORIZING SALE OF ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO HIGHER AND
BETTER OFFERS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) ESTABLISHING SALE
AND BIDDING PROCEDURES AND (D) APPROVING EXPENSE REIMBURSEMENT***

Dated:  St. Louis, Missouri
January 13, 2010

                    THOMPSON COBURN LLP


            By: /s/   David A. Warfield
                    David A. Warfield (EDMo # 4642)
                    dwarfield@thompsoncoburn.com
                    Allison E. Graves (EDMo # )
                    agraves@thompsoncoburn.com
                    One US Bank Plaza
                    St. Louis, MO 63101
                    Ph.  314.552.6000
                    Fax: 314.552.7000

                    Attorneys for the Debtor and Debtor-in-Possession

# INTRODUCTION

The only substantive objection to the Debtor's 363 Motion[1] was filed by the holder of a disputed <u>unsecured</u> claim that is years away from being finally liquidated. Every other creditor and stakeholder in Debtor's case supports the sale of Debtor's assets to Household Essentials, LLC ("<u>Household Essentials</u>") pursuant to the 363 Motion.

This Response addresses the legal and factual issues raised by the United States in its Objection to the 363 Sale (Dkt. No. 66) (hereinafter, the "<u>USA Objection</u>"). The Debtor has filed contemporaneously a Memorandum in Support of the 363 Motion (Dkt. No. 71).

## A. The Proposed Sale is Justifiable and the Parties Are Acting in Good Faith (See pp. 8-13 of the USA Objection)

The United States' principal argument is that the sale is tainted because Household Essentials is an insider. As discussed in more detail in the Memorandum, nothing in either Delaware corporation law[2] or substantive bankruptcy law prohibits a sale of assets to an insider. Delaware corporation law specifically contemplates that a Delaware corporation can enter into a transaction with an insider and provides that such transactions are permitted so long as full disclosure of the insider status is made and the transaction is fair to the corporation. Even the United States does not contest the sufficiency of disclosure in this case, and the Debtor has taken extraordinary steps to ensure the transaction is fair to the corporation, most notably by the Debtor's appointment of an independent Chief Sales Officer to oversee the entire transaction.

As evidence of the alleged lack of good faith, the United States first argues that the Debtor will be unable to pay administrative expenses after the sale to Household Essentials is

---

[1] The 363 Motion was filed at Dkt. No. 31.
[2] The Debtor is a Delaware corporation.

completed. (USA Objection, p. 9) This is just not true, and <u>no</u> evidence supports such an assertion. Section 2.2 (a) of the Asset Purchase Agreement between the Debtor and Household Essentials provides that Household Essentials will assume <u>all</u> postpetition accounts payable, all postpetition payroll and all allowed professional compensation.

The United States also questions the good faith of the transaction by arguing that only Enterprise and Eagle will "receive a return" under the sale. (USA Objection pp. 9-10). The United States, however, is the only party complaining about this outcome. Not a single unsecured creditor has objected to the Proposed Sale. To put it another way, every single creditor holding a liquidated, undisputed claim supports the sale. The only dissenter holds a disputed, unliquidated, unsecured claim. It makes little sense to derail a transaction supported by the holders of all undisputed claims, which would cause an immediate liquidation, because a single claimant, holding a disputed, unliquidated claim, objects. Furthermore, even the United States does not challenge the reality that in a liquidation the two secured creditors would likely suffer a loss, and unsecured creditors would receive nothing.

The United States next argues that the Debtor made millions of dollars of preferential payments. In fact, the vast majority of the payments made by Debtor during the preference period were consistent with the past payment practices of the Debtor and are therefore protected by the ordinary course of business defense in Section 547(c)(2)(2). Furthermore, even if some payments are not protected by one or more of the preference defenses, almost all of the recipients are located in China, rendering collection doubtful. Finally, and most importantly, Enterprise Bank and Eagle hold liens on all avoidance actions to secure Enterprise Bank's DIP loans and to provide adequate protection for use of Enterprise Bank's and Eagle's cash collateral. *See* Final

DIP Order, (Dkt. No. 57 at pp. 11-12)   Enterprise Bank and Eagle Fund, of course, support the Proposed Sale.

The United States also argues that the mere fact that the Debtor paid its vendors during the preference period somehow strips the Proposed Sale of its good faith. (USA Objection at p. 10-11). This argument is downright puzzling. In substance, the United States is criticizing the Debtor for paying its legitimate, undisputed obligations before the filing. Why would these payments taint the Proposed Sale? How would it be better if the Debtor had stopped paying its suppliers?

The United States finally argues that the Proposed Sale is not in good faith because it is designed solely to escape the liability of a single creditor, i.e. the United States. (USA Objection, pp. 11-13). This is factually untrue. The Debtor has posted $1.3 million in deposits (the "Deposits") with the United States. (USA Objection, p. 8). Nothing in the Proposed Sale would affect the Untied States' rights in the Deposits. If the United States succeeds in liquidating the anti-dumping liabilities, nothing in this bankruptcy case will prevent it from seeking payment from the Deposits to the fullest extent permitted by non-bankruptcy law.

Moreover, the United States misses the point. The Debtor does NOT have the option of continuing in business for the next several years while the United States liquidates the anti-dumping claims. The mere specter of these claims has caused trade credit to dry up and has further caused Enterprise Bank to announce that it will discontinue lending past January 31. The choice in this case is either (a) immediate liquidation, with the attendant loss in value and in jobs, or (b) the Proposed Sale. The United States will retain whatever interests it has in the Deposits in either event.

**B.** **Household Essentials Can Credit Bid (pp. 13-14 of the USA Objection)**

The United States argues that Household Essentials cannot exercise the rights of Enterprise Bank and Eagle to credit bid their claims under Section 363(k). Enterprise Bank and Eagle each assigned to Household Essential their respective rights to credit bid under Section 363(k) in order to facilitate the Proposed Sale. This assignment was solely to save time and expense and spare the parties from having to close two separate transactions on the same day. Without such an assignment, the secured lenders could have submitted a credit bid and acquired the Debtor's Assets under Section 363(k). The secured lenders could have then immediately sold the assets to Household Essentials and taken back promissory notes as payment. The economic substance of the two-step transaction would have been exactly the same as under the current Asset Purchase Agreement.

A central component of the 363 sale completed in General Motors Corp.'s Chapter 11 case was the assignment by the United States (which was both General Motor Corp.'s pre-petition secured lender <u>and</u> DIP lender) to a third party purchaser of the United States' right to credit bid its pre-petition liens and DIP liens. *In re General Motors Corp.* 407 B.R. 463, 499 (Bktcy. S.D.N.Y. 2009) ("the U.S. Treasury and EDC may, if they choose, assign their secured debt to the Purchaser and there is then no reason why the Purchaser may not credit bid").

It ill behooves the United States to question the ability of Household Essentials to credit bid Enterprise Bank's and Eagle's secured claims under Section 363(k), particularly because the United States assigned its credit bid rights to a third party purchaser in the General Motors Corp. case. Each of Enterprise Bank and Eagle hold allowed secured claims by operation of Section 1111(a) and 502(a). No challenges to Enterprise Bank's or Eagle's liens or claims were filed before the deadline established by the Court. The agreement to assign the credit bids rights was

disclosed to all parties in the 363 Motion, and it affects no one's rights other than the two secured lenders who were parties to the assignment.

## C. The Debtor Can Sell its Rights in the Deposits (USA Objection pp. 14-15)

The United States also argues that the Debtor cannot sell its interests in the Deposits because the Deposits are not property of the bankruptcy estate. The United States concedes there is <u>no</u> authority for this argument arising in the context of anticipated custom duty deposits. Instead, it cites a few cases regarding a bankruptcy estate's rights in prepetition tax payments. These cases are contrary to the Eighth Circuit's decision in *In re Benn*, 491 F.3d 811, 813 (8th Cir. 2007) ("A debtor's anticipated tax refund, to the extent attributable to events occurring prior to the filing of the petition for bankruptcy, is part of the bankruptcy estate."). Property of the estate includes "every conceivable interest of the debtor, future, non-possessory, contingent, speculative, and derivate". *Matter of Yonikus*, 996 F.2d 866 (7th Cir. 1993).

In this case, the Debtor clearly has a right to a refund in the event that the ultimate duty is determined to be less than the amount deposited. 19 U.S.C. § 1505(b) ("The Customs Service shall . . . refund any excess moneys deposited . . ."). A right to a refund is clearly property of the estate. *See Benn, supra*. Therefore, the Deposits are property of the estate, and they may be sold under Section 363. In any event, and as will be discussed below, the Debtor does not intend to transfer the Deposits free and clear of the United States' interests in such Deposits. The Debtor will suggest language in the sale order that adequately preserves whatever rights the United States has in the Deposits.

## D. The Avoidance Actions May Be Sold (USA Objection pp. 15-16)

The United States next argues that the Debtor's Chapter 5 avoidance actions may not be transferred to Household Essentials. While this argument is suspect as a matter of law, it clearly

- 6 -

makes little practical or economic difference under the facts of this case. As discussed above, almost all of the payments made during the preference period fall within the ordinary course of business defense. Moreover, almost all of the recipients of the payments during the preference period are located in China, rendering collection of preference claims, even if they exist, almost impossible. Finally, Enterprise Bank and Eagle hold liens on the avoidance claims to secure Enterprise Bank's DIP loan and provide adequate protection for use of Enterprise Bank's and Eagle's cash collateral; if the Debtor were liquidated and a Chapter 7 trustee pursued the preference claims (such as they are), Enterprise Bank and Eagle would receive <u>all</u> of the recoveries, if any.

**E.      The Debtor Can Sell its Assets Free and Clear of the Anti-Dumping Duties (USA Objection at pp. 16-17)**

This issue was discussed at length at pp. 10-13 of this Memorandum. Suffice it to say, Section 363(f)(4) permits the sale of assets of a bankruptcy estate free and clear of successor liability claims. This very issue was of central importance in both the recent General Motors Corp. and Chrysler bankruptcy cases, and (ironically, to say the lease) the United States, in those cases, was the principal driving force behind both sales.

**F.      The United States Will Be Adequately Protected On The Sale Of The Deposits (USA Objection at p. 18)**

Contrary to the United States' argument, the Debtor does not intend to alter the United States' rights in the Deposits by one iota. The Debtor will consent to language in the sale order that preserves the United States' rights to receive those Deposits in the event that it is ultimately determined to be entitled to them.

# CONCLUSION

The 363 Motion should be approved. The Debtor has complied with Sections 363(b), 363(f), and 365. Approval of the sale is consistent with the language, purposes and policies underlying Chapter 11.

Dated: January 13, 2010

THOMPSON COBURN LLP

By: ___/s/ David A. Warfield_____
David A. Warfield (4642)
(dwarfield@thompsoncoburn.com)
Allison E. Graves (5217003)
(agraves@thompsoncoburn.com)
One U.S. Bank Plaza
St. Louis, MO 63101
Telephone: 314-552-6000
Facsimile: 314-552-7000

Attorneys for the Debtor and Debtor in Possession

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and genuine copy of the foregoing was served electronically on this 13th day of January, 2010 on all parties on the Court's ECF notice list.

/s/ David A. Warfield_____