UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITNEY DESIGN, INC., | ) | Case No. 09-51928 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## *MEMORANDUM IN OPPOSITION TO*
## *GRANTING OF A STAY OF THE SALE ORDER PENDING APPEAL*

Dated: St. Louis, Missouri
January 19, 2010

THOMPSON COBURN LLP

By: /s/ David A. Warfield
    David A. Warfield (EDMo # 4642)
    dwarfield@thompsoncoburn.com
    Allison E. Graves (EDMo # 5217003)
    agraves@thompsoncoburn.com
    One US Bank Plaza
    St. Louis, MO 63101
    Ph. 314.552.6000
    Fax: 314.552.7000

    Attorneys for the Debtor and Debtor-in-Possession

5069229.4

## INTRODUCTION

Whitney Design, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or the "Company"), submits this *Memorandum in Opposition to the Granting of a Stay of the Sale Order Pending Appeal*. The United States, as hereinafter defined, cannot shoulder the heavy burden required to justify staying the Sale Order pending a possible appeal.

## BACKGROUND

On November 25, 2009, the Debtor filed a Motion for Orders (A) Authorizing Sale of Assets Free and Clear of All Liens, Claims, and Encumbrances, Subject to Higher and Better Offers, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Establishing Sale and Bidding Procedures, and (D) Approving Expense Reimbursement (the "Sale Motion").[1] This court approved the bid procedures portion of the Sale Motion on December 4, 2009.

On January 14, 2010, the Sale Hearing was held to approve the Proposed Sale of the Assets from the Debtor to Household pursuant to the Household Purchase Agreement. The United States of America, on behalf of the Department of Commerce and the Department of Homeland Security, U.S. Customs and Border Protection (the "United States") objected to the Proposed Sale (the "United States Objection").

Following testimony and oral arguments at the Sale Hearing, the Court orally overruled the United States Objection and approved the Proposed Sale. The order approving the Proposed Sale (the "Sale Order") will be entered in the coming days. Following the Sale

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Sale Motion or in one of the Declarations filed in support of the Sale Motion.

Hearing, the United States orally requested that the Court stay the Sale Order, pursuant to Federal Rule of Bankruptcy Procedure 8005, pending a possible appeal by the United States,.

## LEGAL STANDARD

Bankruptcy Rule 8005 governs the granting of a stay pending appeal. In order to prevail, the United States must show the following:

1. It is likely to prevail on the merits of the appeal;

2. It will suffer irreparable injury if the stay is denied;

3. The other party will not be substantially harmed by the stay; and

4. The public interest will be served by the granting of the stay.

*In re Stratford Hotel Co.*, 120 B.R. 515, 516-17 (E.D. Mo. 1990). The burden on the movant is a "heavy" one. *In re Adelphia Communications Corp.*, 333 B.R. 649 (S.D.N.Y. 2005). The court must then balance these factors and determine whether the movant has established by a preponderance of the evidence that a stay should issue. *See In re Davis*, .373 B.R. 207, 210 (Bankr. N.D. Ga. 2007); *In re Level Propane Gases, Inc.*, 304 B.R. 775, 776 (Bankr. N.D. Ohio 2004).

## THE UNITED STATES IS NOT LIKELY TO PREVAIL ON THE MERITS OF ITS APPEAL

The moving party's likelihood of prevailing on the merits of its appeal is generally the most important criteria in deciding whether a stay should be granted. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). To demonstrate a likelihood of success on the merits, the movant must show that the bankruptcy court's decision was clearly erroneous. *Id.*

While the Debtor does not yet know the exact grounds on which the United States might appeal the Sale Order, nothing in the record suggests that the United States would prevail on the merits.

5069229.4

3

The United States argued at the Sale Hearing that the Debtor failed to show a legitimate business justification for the Proposed Sale. However, as the Court noted at the conclusion of the Sale Hearing, the only alternative to the Proposed Sale was the liquidation of the Debtor in a matter of only a few weeks. Other courts have recognized the imminent liquidation of the Debtor to constitute sufficient business justification for an asset sale. For example, Judge Gerber, in the *General Motors Corp.* case said

> "The current transaction is the only option on the table. The Court is thus faced with a clear choice: to approve the proposed sale transaction, preserve the going-concern value of the Debtors' business, and maximize substantial value for stakeholders (despite the pain that this course will inflict on numerous innocent parties), or reject the transaction and precipitate the dismantling and liquidation of GM to the detriment of all involved. *Preventing this harm serves the core purposes of the Bankruptcy Code and constitutes a strong business justification under section 363 of the Code to sell the debtor' assets outside of a plan process.*"

*In re General Motors Corp.*, 407 B.R. 463, 492 (Bktcy. S.D.N.Y. 2009) (emphasis in the original).

The United States also opposed the Proposed Sale because the Debtor does not contemplate filing a liquidating plan after the sale is closed. The United States, however, never explained why this is particularly significant. Nothing in Section 363(b) suggests that a debtor must confirm a liquidating plan after selling all of its assets. All administrative expenses will be paid as a result of the Proposed Sale. While the general unsecured creditors will not be paid as a result of the Proposed Sale, none of them objected. The only objector holds a disputed, unliquidated claim. Why should the presence or absence of a liquidating plan affect the jobs of several dozen people or reduce the recoveries of the secured creditors by several million dollars?

The United States also argued that the Debtor paid millions of dollars in the 90 day period before filing that are recoverable as preferential transfers. This argument is based

5069229.4

4

solely on the Debtor's Answer to Question 3(b) of the Statement of Financial Affairs, which contains only a listing of all payments made during the 90-day preference period (without regard either to the Debtor's ability to actually avoid or recover any of these payment under Sections 547(b) and 550(a) or to the defenses available to the recipients under Section 547(c)). In fact, there is no evidence in the record that the Debtor's avoidance claims have any real economic value after accounting for the defenses. Moreover, the avoidance claims remain subject to Enterprise's and Eagle's liens granted under the final DIP order.

Finally, the United States complains that Enterprise and Eagle improperly assigned their rights to credit bid under Section 363(k). In actuality, Enterprise and Eagle exercised their credit bid rights through their proxy, Household. This is the identical situation that occurred in the General Motor case, in which the United States exercised its credit bid rights through a separate entity sponsored by the United States, which was the ultimate successful bidder.

The United States simply does not have a likelihood of success on the merits if it chooses to appeal the Sale Order. As a result, it should not be granted a stay of the Sale Order pending such an appeal.

## THE UNITED STATES WILL NOT SUFFER IRREPARABLE INJURY IF THE STAY IS DENIED

**1. The United States will stand in the same position with respect to its claim against the Debtor regardless of whether a stay of the Sale Order is imposed.**

The United States will not suffer irreparable harm if the stay is denied. Presumably, the United States will argue that its appeal will be rendered moot if the stay is denied because the Debtor will consummate the Proposed Sale to Household while the appeal is pending. A "majority of courts have held that a risk of mootness, standing alone, does not

constitute irreparable harm." *See In re Adelphia Communications Corp.*, 361 B.R. 337, 347 & n. 39 [need court/year citation] (citing cases). Therefore, the United States will have to articulate some basis for a stay other than equitable mootness.

The United States cannot argue that it will be economically harmed by a denial of a stay. If the Court denies the stay and the Proposed Sale closes, the United States will be entitled to pursue recovery from approximately $1.3 million in deposits (the "Deposits"), but will be unable to collect any additional amounts from the Debtor. If the Court grants the stay, the Debtor will be unable to close the Proposed Sale, requiring the Debtor to liquidate its assets. Because the unrefuted evidence at the Sale Hearing (Baxter Declaration at ¶ 15) was that the liquidation value of the Debtor's assets is substantially less than Enterprise Bank's first lien amount, neither the United States nor any other unsecured creditors would receive any distribution from a liquidation. Therefore, in either scenario the economic result for the United States is precisely the same – its only possible recovery is from the Deposits.

2. **Any injury the United States could claim based on the failure to impose a stay of the Sale Order pending appeal is monetary in nature, and thus, is not an irreparable injury.**

Even if the United States could show that it would suffer some sort of economic injury as a result of a denial of a stay of the Sale Order pending appeal, this would not constitute an "irreparable injury" justifying relief under Rule 8005. To establish "irreparable injury" in the absence of a stay, the movant generally must show that money damages are inadequate to protect it during the pendency of the appeal. *Henkel v. Lickman (In re Lickman)*, 301 B.R. 739, 748 (Bankr. M.D. Fla. 2003). "Generally, economic loss or monetary injury is not irreparable because it can be estimated and compensated." *Sportsstuff, Inc. v. Attali-In (In re Sportsstuff, Inc.)*, 2009 WL 3526188, *3 (Bankr. D. Neb. October 22, 2009). Further, the irreparable harm

claimed must be "neither remote nor speculative, but actual and imminent." *Lickman*, 301 B.R. at 748 (*citing In re Dunes Hotel Assocs.*, 1997 WL 33344279, *4 (Bankr. D.S.C. 1997)).

Moreover, any economic injury to the United States is purely speculative. If the Debtor's anti-dumping liabilities are determined to be less than the amount of the Deposits, the United States would have suffered no injury at all because the full amount of its claim will be covered by the Deposits. It will very likely be years before the United States Court of International Trade reaches a final determination of the Debtor's anti-dumping liabilities for each of the review periods It would be extraordinarily inequitable to stay the Sale Order, with the attendant inevitable liquidation of the Debtor, based solely on the mere theoretical possibility that the United States will one day liquidate its anti-dumping claims for an amount greater than the Deposits.

**THIRD PARTIES WILL BE SUBSTANTIALLY HARMED
IF THE STAY OF THE SALE ORDER IS GRANTED**

The Debtor, along with its employees, its trade vendors and its secured creditors, will be substantially harmed by granting a stay of the Sale Order. If there is a stay, the Debtor will be forced to liquidate shortly after January 31, 2010. This will clearly harm the Debtor's employees, nearly all of which Household planned to employ following the closing of the Proposed Sale. It would further harm the independent sales representatives and consultants that generate much of their income from their work with the Debtor and would continue to do the same work for Household after the closing of the Proposed Sale. Finally, the Debtor's secured creditors will also be harmed because a liquidation of the Debtor's assets would be insufficient to satisfy Enterprise's and Eagle's secured claims in full.

The harm suffered by the Debtor and other third parties would be irreparable. No matter what the outcome on appeal might be, nothing could put the Debtor back in business if the

Proposed Sale does not close as planned. The harm to the Debtor's employees, trade vendors and secured creditors clearly outweighs the theoretical potential for some unquantified monetary harm in the distant future to the United States. Thus, a stay of the Sale Order pending appeal should not be granted.

### THE PUBLIC INTEREST WOULD BE SERVED BY DENIAL OF A STAY OF THE SALE ORDER

In all times, but especially in these economically troubled times, there is an intense public interest promoting job creation and preservation. The importance of such public interests is clearly seen in the unprecedented steps taken by the United State government in the General Motors and Chrysler bankruptcies, as well as in lending money to troubled financial institutions in order to keep them from failing. Although on a smaller scale, there is a strong public interest in keeping the Debtor's employed through the sale of the Assets to Household and in preserving Household doing business with vendors and other business people in St. Louis and around the globe. The only way to serve this public interest is to allow the Proposed Sale to move forward as contemplated in the Sale Order. As such, a stay of the Sale Order should not be imposed.

### CONCLUSION

In a balancing of the factors set forth above, it is clear that the United States cannot show that imposition of a stay of the Sale Order pending appeal is appropriate in this case. None of the factors supports such a stay. As such, the United States' motion for a stay of the Sale Order pending appeal should be denied.

Dated: January 19, 2010

        THOMPSON COBURN LLP

By:   /s/ David A. Warfield
     David A. Warfield (4642)
     (dwarfield@thompsoncoburn.com)
     Allison E. Graves (5217003)
     (agraves@thompsoncoburn.com)
     One U.S. Bank Plaza
     St. Louis, MO 63101
     Telephone: 314-552-6000
     Facsimile: 314-552-7000

Attorneys for the Debtor and Debtor in Possession

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and genuine copy of the foregoing was served electronically on this 19th day of January, 2010 on all parties on the Court's ECF notice list.

     /s/ David A. Warfield