IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| In re: | § | Case No. 09-51928-705 |
|---|---|---|
| | § | |
| Whitney Design, Inc., | § | Chapter 11 |
| | § | |
| Debtor. | § | |

ORDER DENYING ORAL MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8005 FOR STAY OF THE EFFECTIVENESS OF ORDER GRANTING THE AMENDED MOTION TO SELL, PENDING ITS APPEAL

On January 14, 2010, the Court held a hearing (the "Hearing") on the Debtor's motion seeking authority to sell substantially all its assets (the "Motion to Sell") [Docket #31] and the Objection to the Motion to Sell [Docket #66] filed by the Department of Commerce (the "DOC"), a creditor in the case. At the conclusion of the Hearing, the Court ordered from the bench that the Motion to Sell be granted and that the Objection be overruled, and advised that a written order consistent with the bench ruling would issue forthwith. The DOC then made an oral motion to stay the effectiveness pending appeal of any such written order, pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 8005 (the "Motion to Stay"). The Court gave the parties until 12:00 P.M. (Central) on January 19, 2010, to submit briefing on the Motion to Stay. The Debtor and the DOC each timely filed such briefs [Docket ##77 & 78]. Several interested parties also filed briefs joining in the Debtor's brief (together with briefs at Docket ##77 & 78, the "Briefs") [Docket ##79, 80 & 81].

On January 19, 2010, the Court entered an order [Docket #82] sustaining in part the Objection as to one of the DOC's objection grounds, and allowing the Debtor to file an amended motion to sell and a revised asset purchase agreement, to contain terms consistent with the Court's order. On January 21, 2010, the Debtor filed an amended

1

motion to sell (the "Amended Motion to Sell") [Docket #83]. Over the course of the next several days, the Debtor also filed several amended asset purchase agreements, making minor but necessary revisions to the asset purchase agreement to be consistent with the representations made by the Debtor at the Hearing and the language of the Bankruptcy Code. The final revised asset purchase agreement was filed on January 28, 2010 (the "APA," as fully amended). On January 29, 2010, the Court entered its Order Granting the Motion to Sell and Memorandum Opinion in Support.

Now, upon consideration of the Briefs and the argument and representations therein and the applicable law, the Court **ORDERS** that the Motion to Stay be **DENIED** for the following reasons.

## I. FACTUAL BACKGROUND

For the purposes of brevity, the Court will not restate now its lengthy findings of fact made in the Memorandum Opinion in Support, but fully incorporates them by reference into the instant Order. It suffices for purposes here for the Court to summarize the facts as follows:

The Debtor filed its petition for chapter 11 bankruptcy relief on November 21, 2010. The Debtor currently continues business operations and the value of its assets is closely tied up in maintaining its going concern value. However, as of February 1, 2010, the Debtor will no longer have debtor in possession financing, and has no prospects for obtaining such. If the Debtor goes dark after January 31, 2010, it will have to convert to a chapter 7 case. Its going concern value will collapse and the estate's assets will be sold at a liquidation or foreclosure price. To avoid this, on November 25, 2009, the Debtor filed its Motion to Sell, seeking to sell substantially all its assets pursuant to a §

363.[1] An offer made by Household Essentials, Inc. ("Household Essentials"), an entity owned by the same principals who own the Debtor, served as the stalking horse. Pursuant to auction and bidding procedures approved by the Court, the Debtor (under the direction of an independent Chief Sales Officer, not the principals) marketed its assets and advertised the auction and sale. However, despite these efforts, no competing bids were received. The Debtor then sought approval of the proposed § 363 sale to Household Essentials as representing the highest and best offer for the assets.

Upon consideration of the Motion to Sell and the Objection, the Court refused to permit the Debtor's avoidance actions to be included as property to be sold, and the parties removed them from the contemplated consideration. The Court thereafter found that the standards for approving a § 363 sale, as set forth in *In re Channel One Communications, Inc.*, 117 B.R. 493 (Bankr. E.D. Mo. 1990), were met and granted the Amended Motion to Sell.

## II. ANALYSIS

A party in interest may request that the bankruptcy court stay the effectiveness of an order pending the appeal of such order. Rule 8005 provides that "[a] motion for stay of the judgment, order, or decree of a bankruptcy judge . . . pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." To prevail on a motion to stay pending appeal, the movant must establish that:

(1) he is likely to prevail on the merits of the appeal;

(2) he will suffer irreparable injury if the stay is denied;

(3) the other party will not be substantially harmed by the stay; and

---

[1] All references to "section[s]" or "§[§]" herein shall refer to the indicated section of the title 11 of the United States Code (the "Bankruptcy Code").

(4) the public interest will be served by the granting of the stay.

*In re Martin*, 199 B.R. 175, 176 (Bankr. E.D. Ark. 1996); *Community Fed. & Sav. Loan Assoc. v. Stratford Hotel Co.*, 120 B.R. 515, 516-17 (E.D. Mo. 1990)(citing *Nesslage v. New York Secs. Inc.*, 107 F.R.D. 389 (E.D. Mo. 1985)). The DOC has established none of these elements.

### A. The DOC is not likely to prevail on the merits of an appeal.

The DOC is not likely—or even has a fair chance—to prevail on the merits of an appeal. The applicable statute, rules and case law were clear. There were no circumstances of conflicting evidence where the Court was required to make difficult credibility determinations. Several points of objection were based on incorrect understandings of either fact or law. The DOC argued that the sale is in bad faith, but offered no evidence of collusion, fraud, breach of fiduciary duty, or other misconduct related to the sale. The DOC argued that the sale is against public policy because it interferes with the DOC's ability to enforce anti-dumping law, but offered no authority upon which the Court could afford the DOC's claims protections not provided under the Bankruptcy Code. And the DOC asked the Court to adopt a new standard for reviewing § 363 sales pursuant to *In re Gulf Coast Oil Corp.*, 404 B.R. 407 (Bankr. S.D. Tex. 2009). However, the Debtor's proposed sale is distinguishable from the sale at issue in *Gulf Coast*, as described in the Memorandum Opinion in Support.

Accordingly, the Court **FINDS** that the DOC has not shown that it is likely to prevail on the merits of any appeal.

### B. The DOC will not suffer an irreparable injury if the stay is denied.

If the stay is denied, the Debtor and Household Essentials will close the sale and the DOC will be left with unsecured claims against the estate. If the stay is granted, the Debtor and Household Essentials will not close the sale and the DOC will be left with unsecured claims against the estate. In neither case, however, will the administration of the estate include a distribution to unsecured creditors that includes the value of the assets to be sold. Those assets are subject to the secured creditors' blanket liens, and there are no prospects that the sale of these assets, if postponed, would result in a sale price exceeding the value of the blanket liens. The DOC, and all other unsecured creditors, will receive as a result of the proposed sale that which they would receive in a liquidation. As such, not only will the DOC not suffer an "irreparable" injury, as a result of the stay being denied, it will not suffer an injury—period.

The DOC argues that "a significant public interest" will be thwarted as a result of the sale because it will not be able to pursue the Debtor for the anti-dumping claims in excess of the $1.3 million in anti-dumping deposits of the Debtor that it currently holds.[2] However, even if this were true, the DOC still would not experience an "injury"; it will experience the operation of law as Congress intended—which is not an injury. As the Court noted in the Memorandum Opinion in Support, Congress is free to change the bankruptcy law, to provide greater protection to the claims of the DOC against a debtor for anti-dumping duties. However, unless and until this happens, this Court is bound by the Bankruptcy Code as it is written, which permits a sale such as this, without regard to the resulting hampering of the enforcement of federal anti-dumping law. The fact of the

---

[2] Prepetition, the Debtor placed this amount on deposit, as required by law, for its anti-dumping duties.

matter is, bankruptcy law often hampers or undermines the rights and interests of other parties, whether those interests are public or private.

Accordingly, the Court **FINDS** that the DOC has not shown that it will suffer an irreparable injury if the stay is not granted.

## C. The DOC has not shown that other parties will not be substantially harmed by the stay.

If the stay is granted, the § 363 sale will not close. Because the Debtor exhausts its debtor in possession financing on February 1, 2010, the Debtor thereafter will have to cease operations and convert to a chapter 7 liquidation proceeding. As a result, the estate's value will dramatically depreciate as a result of the loss of going concern value, the employees of the Debtor will lose their jobs, and the secured creditors' collateral will dramatically diminish in value (resulting in, among other things, an enlargement of the undersecured portion of those creditors' claims). The harm that will come to other parties is both obvious and substantial.

Accordingly, the Court **FINDS** that the DOC has not shown that other parties will not be substantially harmed by the stay.

## D. The DOC has not shown that the public interest will be served by granting the stay.

The DOC argues that there is a significant public interest in holding the Debtor fully accountable for its anti-dumping liabilities. However, this does not equate to a public interest that will be served by granting the stay. Granting the stay—and killing the sale and forcing the Debtor into a chapter 7 liquidation—will not allow the DOC to better hold the Debtor accountable for its anti-dumping liabilities. There will be no greater distribution available to unsecured creditors. It simply will result in the secured

creditors receiving less for their secured claims, the pool of unsecured claims being enlarged, and the Debtors' employees being terminated.  The Court is hard-pressed to see how granting a stay would serve any purpose other than to seek the worst possible outcome for everyone involved, including the DOC.  The DOC's suggestion that the public interest will be served by granting the stay conveniently ignores the fact that, if the stay is granted, the appeal will never be heard.  The sale will not close, the case will convert, the appeal will become moot, and the DOC will never have the chance to adjudicate the issues on appeal.  In reality, what the DOC asks for is not the chance to legitimately prosecute a public interest, but for this Court to effectively allow anti-dumping policy to trump bankruptcy law, under the guise of a stay that will mean the demise of the sale.

Accordingly, the Court **FINDS** that the DOC has not shown that the public interest will be substantially harmed by the stay.

### III.  CONCLUSION

For the reasons set forth above, the Court **FINDS** that grounds do not exist for granting a stay of the effectiveness of the Order Granting the Amended Motion to Sell pending its appeal, and **HOLDS** that it is not proper to granting the Motion to Stay.  Accordingly, the Court **ORDERS** that the Motion to Stay be **DENIED**.

*/s/ Charles E. Rendlen III*
CHARLES E. RENDLEN, III
U.S. Bankruptcy Judge

DATED:  January 29, 2010
St. Louis, Missouri
mtc

7

**Copy mailed to:**

David A. Warfield
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101